THE PEOPLE *ex rel.* Thomas M. Jackson

*v.*

THE SUBURBAN RAILROAD COMPANY.

*Opinion filed February 17, 1899—Rehearing denied April 7, 1899.*

1. MUNICIPAL CORPORATIONS—*power of municipality to impose conditions on use of streets by street railway.* The power possessed by the State to attach, as a condition to the grant of a franchise to a *quasi* public corporation, the performance of duties beneficial to the public, may be exercised by a municipality under its power to grant to such corporation the use of its streets.

2. SAME—*authority to use streets for street railway is not a mere license.* The fact that a street railway obtains its charter under the State laws does not make the authority given it by a municipality to use streets and alleys a mere license, as the charter merely gives the company its existence, and it cannot carry out the purpose of its existence without further exercise of sovereign power which has been delegated to municipalities with respect to their streets.

3. SAME—*street railway ordinance and its acceptance do not constitute a private contract.* The fact that an ordinance granting a street railway company the use of streets and alleys upon certain conditions requires formal acceptance by the company does not render the grant a mere private contract, so as to preclude *mandamus* by a citizen of the municipality to enforce compliance with the conditions of the ordinance.

4. SAME—*general railroad powers do not authorize the use of streets for electrical cars.* A company organized under the general Railroad act cannot equip its road for operation over the streets of a village by electricity, using poles, wires, etc., without the consent of the village authorities; and such consent is a sufficient consideration for the enforcement of conditions as to rates of fare, imposed by the ordinance granting such consent.

5. STREET RAILWAYS—*street railway is a quasi public corporation.* A street railway company is not a private but a *quasi* public corporation, and owes it as a duty to the public to demand only reasonable fares for the transportation of passengers and to serve the public without unjust discrimination, and the performance of such duty may be secured to the public by the State acting directly or through a municipality.

6. SAME—*when street railway is estopped to deny unjust discrimination.* A village, on granting a suburban street railway company the right to use its streets, may prescribe as a condition that the fare between the village and points in the city shall not exceed that charged patrons from another town on the line; and the accept-

ance of the ordinance and enjoyment of its benefits estop the company to deny that the exaction of a greater amount is not unjust discrimination.

7. SAME—*when street railway company cannot set up ultra vires.*   A street railway company having accepted an ordinance requiring the performance of certain undertakings, and having enjoyed the benefits and concessions thereunder, cannot escape performance of such undertakings by setting up that they were *ultra vires* the municipality and the company.

8. SAME—*right to use streets is sufficient consideration for company's undertakings.* The right given by a municipality to a street railway company to use its streets is sufficient consideration for the undertakings of the company to comply with the conditions of the ordinance respecting charge for transportation.

9. MANDAMUS—*citizen may enforce compliance by street railway with public undertaking.* A condition in an ordinance granting a suburban street railway company the right to use the streets of a village in consideration that the fare between the village and points in the city shall not exceed that charged patrons from another town on the line is for the benefit of the public, and any citizen of such village may by *mandamus* compel performance of such condition.

10. SAME—*practice in mandamus suits begun in Supreme Court.* The Supreme Court, in an original *mandamus* suit, may, in its discretion, refuse to allow an issue of fact to be made after the case has been submitted on demurrer to the petition.

ORIGINAL petition for *mandamus.*

This is a petition filed in this court by the relator for a writ of *mandamus* against the respondent, the Suburban Railroad Company. The petition avers the relator is a citizen of the United States and a resident of the village of River Forest, and that the respondent, the Suburban Railroad Company, is a corporation organized under the laws of this State relating to the organization of railroad companies, and is, and since before March 17, 1897, has been, engaged in the business of extending, constructing and operating an electric railroad through parts of the town of Cicero, the village of Harlem and the village of River Forest, in Cook county, Illinois; that said village of River Forest is, and on and before March 17, 1897, was, a municipal corporation organized under general statutes of the State of Illinois providing for the

incorporation of cities and villages; that on the said 17th day of March, 1897, said Suburban Railroad Company made legal application to the president and board of trustees of the village of River Forest for certain privileges and licenses set out in an ordinance hereinafter set forth, and that said president and trustees, on March 17 aforesaid, in consideration of said application, adopted an ordinance, which is set out in full in the petition.

Section 1 of said ordinance authorizes and permits the respondent company to operate its line of railroad by electrical power only, over and along the lines of the railroads of the Chicago, Harlem and Batavia Railroad Company and of the Chicago and Wisconsin Railroad Company, from the point of connection with the first named railroad to the- northern limits of the said village, and to construct and maintain over, along and upon any and all intervening streets, alleys, parks and public places along said route, all poles, wires and appurtenances, including feed wires, necessary or convenient for the purposes, in consideration of the undertaking of the respondent company to comply with the certain conditions contained in other sections of the ordinance. Section 2 provides no part of the respondent railroad shall be operated in the village until its entire line to the northern limits of the village is completed and in operation. Section 3 specifies the height the wires shall be strung above the tracks, describes the poles to be used, where such poles shall be set, the method or manner of setting the poles, and commits the same to the supervision of the village authorities. Section 4 relates to the character of the cars to be used, and restricts the traffic of the road to passengers, their baggage and express matter, and requires cars to be supplied with heat during certain designated months. Section 5 requires cars shall be stopped and passengers received and allowed to alight at all intersections of streets and at the middle of all blocks of more than five hundred feet in

length, at Hawthorn avenue, and such other points as the village authorities may afterward designate.   Section 6 is as follows:

"Sec. 6. The permission and authority granted in section 1 hereof is upon the express condition that the said Suburban Railroad Company shall afford its passengers a continuous trip between any and all points along the line of railroad herein authorized to be operated in the village of River Forest, to the northern limits of said village and any station on the loop line in the city of Chicago, and all intermediate points; or in case the loop line is not operated or ceases to be operated, then between said points in the village of River Forest and some point in the city of Chicago east of the south branch of the Chicago river and north of Harrison street, and all intermediate points: *Provided*, that said passengers shall not be obliged to be transferred during said trip, except at the point of connection between the said Suburban railroad and any elevated railroad running to and over said loop line or said point in the city of Chicago east of the south branch of the Chicago river as aforesaid; and in consideration thereof the Chicago, Harlem and Batavia Railway Company and the Chicago and Northern Pacific Railroad Company, and the said Suburban Railroad Company, or the successors or assigns of either of said companies, shall not be required to run any car to the station of the Chicago and Great Western Railroad Company in said city of Chicago."

Section 7 requires cars to be run between certain specified hours.   Section 8 is as follows:

"Sec. 8. The rate of fare shall not exceed ten cents for one continuous ride of one trip from any point on said railroad in River Forest to any station on the loop line or some point in the city of Chicago east of the south branch of the Chicago river and north of Harrison street, as provided in section 6 hereof, or return, or to any intermediate point in said city of Chicago or return; and

the rate of fare shall not exceed five cents for one continuous ride of one trip from any point on said railroad in River Forest to the point of connection of the said railroad with any elevated railroad, as provided in section 6, or any intermediate point or return: *Provided*, that the fare between any point on said railroad in the village of River Forest and any of the said points in the city of Chicago, or the said point of connection of said railroad with any elevated railroad, as aforesaid, and intermediate points, shall not exceed the fare charged at any point in the town of Cicero west of the east line of Central avenue or in the village of Harlem, or in either of them, to the same points or return, either for single trip or at commutation rates, or otherwise: *Provided, further*, that the said company shall provide and furnish, free of charge to passengers who have paid fare upon said line, transfer tickets at and to any points upon all the lines operated and controlled by the said company east of the Desplaines river."

The other sections of the ordinance are not involved, save section 11, which is as follows:

"Sec. 11. That the privileges should be binding upon successors and assigns, and that a violation of any of the conditions and provisions herein to be observed by the said company, its successors or assigns, shall render this ordinance absolutely null and void."

The petitioner avers the board of directors of the respondent company adopted a resolution accepting the ordinance, together with and subject to all the conditions in said ordinance contained, and sets out a certified copy of said resolutions, which he avers the respondent company filed in the office of the clerk of the village; that after the passage of the ordinance the railroad company entered into the possession and enjoyment of the rights and privileges granted in the ordinance, constructed its railroad and operated its passenger cars thereon, and that it has ever since been and is now in the possession and

enjoyment of all the franchises and privileges, and has, since March 2, 1898, operated its passenger cars by electrical power, "under and in pursuance of the provisions of said ordinance," through the village of River Forest over the line of railroad known as the Chicago, Harlem and Batavia railroad and over the line of railroad known as the Chicago and Wisconsin railroad, to the northern limits of the village, and has constructed and maintained the same over and upon the intervening streets along said route, and that it has placed its poles, wires and appurtenances, including necessary and convenient feed wires, for the purpose of operating said railroad, and still continues to operate its railroad and cars in the village of River Forest; that at the time of the passage of the ordinance the railroad line of the Suburban Railroad Company connected with the railroad line of the Metropolitan Elevated Railroad Company at its crossing over West Fortieth street, in the city of Chicago; that passenger cars were operated frequently over the Metropolitan road from West Fortieth street to the central business portion of the city of Chicago; that the Suburban Railroad Company did, before March 2, 1898, afford its passengers a continuous trip between all points along the line of its railroad so operated in the village of River Forest, from the northern limits of the village to the stations along the line described as the "Union loop," in the city of Chicago, and all intermediate points, and that the Suburban Railroad Company did, before March 2, 1898, extend its electric road north on Fifty-second street, in the town of Cicero, to Lake street, and operated its passenger cars thereon and connected it with the line of railroad of the Lake Street Elevated Railroad Company, which was a corporation organized under the laws of the State of Illinois relating to railroads; that the Lake street company operated its cars to and around the loop line from Fifty-second street on Lake street; that the village of River Forest lies west of the city of Chicago and west of the

east line of Central avenue, in the town of Cicero, so that passengers on the Suburban railroad from any point in the village of River Forest toward the city of Chicago have to pass through the village of Harlem and through the town of Cicero west of Central avenue in said town; that the rate of fare for a continuous ride charged by the Suburban Railroad Company "and said connecting elevated railroad lines from the village of River Forest to any point on said loop line, in the city of Chicago, is now, and has ever since the operation of said railroad by said Suburban Railroad Company in the village of River Forest been, ten cents, and the same price for return or intermediate points, being the highest rate of fare provided for by said ordinance;" that on or about March 2, 1898, the Suburban Railroad Company offered for sale, and sold, passenger tickets of twelve rides for one dollar, "good for one continuous ride over its said railroad line in the town of Cicero only, and the said Lake Street Elevated railroad and around said loop line, and has ever since and is now offering said tickets for sale and selling the same," giving the form of tickets; that notwithstanding the provisions of said ordinance, and especially the provisions of "section 8 thereof, the said Suburban Railroad Company has neglected and refused, and still neglects and refuses, to sell tickets of twelve rides for one dollar, good for one continuous ride from any point in River Forest over the line of the Suburban Railroad Company and the Lake Street Elevated railroad around said loop line, (also called Union loop,) in the city of Chicago, or any equivalent tickets or fare therefor, but continues to and does charge cash fare of ten cents therefor, although said Suburban Railroad Company has since said March 2, 1898, and still does sell tickets for one dollar good for said twelve rides west of said Central avenue, in the town of Cicero, to the east line of the village of Harlem and no further, and refuses to accept said tickets for rides entering into or from the village of River For-

est." The petitioner then further represents "that he has often requested said railroad company to comply with the provisions of said ordinance in regard to said fare, and especially the provisions contained in said section 8 of said ordinance, that provides as follows:    'That the fare between any point on said railroad in the village of River Forest and any of the said points in the city of Chicago, or the said point of connection of said railroad with any elevated railroad, as aforesaid, and any intermediate points, shall not exceed the fare charged at any point in the town of Cicero west of the east line of Central avenue or in the village of Harlem, or in either of them, to the same point or return, either for single trip or at commutation rates or otherwise.' "    Thereupon the petitioner prays for issuing of writ of *mandamus* directed to the company, its officers and agents, "that so long and at such times as said Suburban Railroad Company shall sell or cause to be sold tickets of twelve rides for one dollar, good for one continuous ride from any stopping place in the town of Cicero west of the east line of Central avenue over the railroad lines of said Suburban Railroad Company and the said Lake Street Elevated Railroad Company to and from any point on the Union loop, in the city of Chicago, said Suburban Railroad Company shall also sell, or cause to be sold on demand, passenger tickets of twelve rides for one dollar each, good from any stopping point on its said railroad line in the village of River Forest, over the lines of the said Suburban Railroad Company and the said Lake Street Elevated Railroad Company to and from any point on the said Union loop, in the city of Chicago, with equal facilities for the purchase of said tickets, and that said Suburban Railroad Company shall furnish its passengers a continuous trip between all stopping points on its said line in the village of River Forest to any station on the Union loop line in the city of Chicago at a rate of fare not exceeding ten cents for one continuous ride either way

between said point, and not exceeding the fare charged at any point in the town of Cicero west of the east line of Central avenue in said town to the same point on said Union loop or return, either for single trip or at commutation rates, or otherwise; and that such further orders may be made in the premises as justice may require."

The respondent company interposed a demurrer to the petition and the relator entered his joinder in demurrer, and the cause was submitted for determination to the court.

THATCHER & GRIFFEN, and FRANK LITTLE, for relator:

*Mandamus* is the proper remedy to enforce a public right. The people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed and the right in question enforced. *County of Pike* v. *People*, 11 Ill. 202.

Where the application for the writ relates to a matter affecting the public, it is sufficient, to entitle the person to become a relator, that he is interested as a citizen. *Ottawa* v. *People*, 48 Ill. 233; *Hall* v. *People*, 57 id. 307; *Railway Co.* v. *State*, 38 S. W. Rep. 54; *Wright* v. *Railway Co.* 95 Wis. 36; *Martin* v. *Railway Co.* 3 Phila. 316; *State* v. *Railway Co.* 53 Pac. Rep. 719; *Glencoe* v. *People*, 78 Ill. 390.

The performance of the duty which a street railway company owes to the public to operate its lines in accordance with the provisions of a city ordinance under which its road was constructed may be enforced by *mandamus*. *Potwin Place* v. *Railway Co.* 33 Kan. 309.

KNIGHT & BROWN, for respondent:

The ordinance being a mere contract or license, in case the company should fail to fulfill the terms of that contract there is adequate remedy for relief by the village itself, and no citizen or resident of the village can by law take up the fight on behalf of the village.

*Mandamus* will not lie to compel the performance of an executory contract, as that writ is ordinarily limited to the enforcement of such obligations as are imposed by law.    High on Mandamus, sec. 321; *People* v. *Dulaney*, 96 Ill. 511; *State* v. *Turnpike Co.* 16 Ohio St. 303; Wood on Mandamus, 18.

In Merrill on Mandamus (sec. 16) it is said: "Since the object of this writ is to enforce duties created by law, it will not lie to enforce private contracts unless it is extended to such cases by a statutory enactment." *Benson* v. *Paul*, 6 El. & Bl. 273; *State* v. *Republican, etc. Co.* 20 Kan. 404; *People* v. *Dulaney*, 96 Ill. 503; *Toby* v. *Hakes*, 54 Conn. 274; *State* v. *Salem Church*, 114 Ind. 389; *State* v. *Einstein*, 46 N. J. L. 479; *Kennedy* v. *Board of Education*, 82 Cal. 483.

The respondent had the right to use electricity as a motive power at the time of the passage of the ordinance. It is a corporation organized under the general Railroad act.    There is no limitation under that act as to the motive power which a railroad corporation shall use. It therefore has the right to adopt any motive power, whether it be electricity, compressed air or steam.    The charter being silent as to the motive power, the company had the right to use any kind of motive power in propelling its cars which it might see fit to adopt.    *Taggart* v. *Railway Co.* 16 R. I. 668; *Railway Co.* v. *Lake View*, 105 Ill. 207; *Halsey* v. *Railway Co.* 47 N. J. Eq. 380.

In *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railway Co.* 156 Ill. 255, the court referred to and approved the doctrine stated in the *Taggart case* and the *Halsey case*, heretofore cited, and in speaking of telegraph and telephone poles said that they were not directly ancillary to the use of the street for the purposes of public travel, and also said: "But it is otherwise when such erections aid and facilitate the use of the public street for the purpose of travel and transportation.    In the latter case they impose no additional servitude."

There was no consideration moving to the respondent for the supposed agreement upon its part to give the rate of fare as specified in the ordinance. The supposed promise by the respondent was given for nothing in return, and was therefore void. Bishop on Contracts, sec. 77; *Vogel* v. *Pekoc*, 157 Ill. 339.

Mr. Justice Boggs delivered the opinion of the court:

The objection the petition is not verified by a sufficient affidavit has been obviated by an amended affidavit filed by leave of the court.

It is urged the writ is here sought to be availed of for the purpose of securing the fulfillment of the terms and conditions of a private contract, and that it is fundamental law mere contract obligations cannot be enforced by *mandamus*. The appellee is a *quasi* public corporation. The sovereign power, when granting a public franchise to corporations of that character, may declare certain acts in the nature of duties to the public shall be performed by the corporation to or upon whom the franchise is conferred, and may provide the investiture of the franchise shall be conditional upon the acceptance of the burden of performing such acts or service. It is now well settled that when there is a grant and acceptance of a public franchise involving the performance of such acts or service the corporation accepting the franchise may be compelled by the writ of *mandamus* to perform the duty so enjoined by the grant and consented to by the acceptance thereof. Merrell on Mandamus, secs. 27, 157, 159; *Hangen* v. *Water Co.* 28 Pac. Rep. 244; *Illinois Central Railroad Co.* v. *State*, 37 Ind. 489; *City of Potwin Place* v. *Railroad Co.* 51 Kan. 609; *San Antonio S. R. W. Co.* v. *State*, 38 S. W. Rep. 55.

But it is insisted the authority granted the respondent company by the ordinance under consideration is not a franchise but a mere license, and which, having been acted upon, has become irrevocable, and *City of Belleville*

v. *Citizens' Horse Railway Co.* 152 Ill. 171, is cited as in support of the contention. The General Assembly, representing the people at large, possesses full and paramount power over all highways, streets, alleys, and like public places in the State. Had the charter which gives life to the respondent company been granted upon the conditions expressed in the ordinance under consideration, and had the company accepted such charter as it did the ordinance and acted under it in like manner as under the ordinance, the enforcement of the service and duties imposed by the charter might, it is clear, have been accomplished by the aid of the writ of *mandamus,* though the right obtained by the charter to enter upon the streets of the village be in such case but a license. The State does not, however, exercise directly that full paramount power which it possesses over streets, alleys, etc., but in the distribution of governmental powers the General Assembly adopted the policy of selecting the cities and villages of the State as governmental agencies and delegating to such municipalities the power to regulate and control the use of the streets, alleys, etc., within their respective limits. Such power thus delegated is exercised by the municipal authorities acting in behalf of the State for the benefit of the public.

While it is true the charter of a street railway corporation is granted under the general laws of the State, yet a charter so obtained gives but the bare power to exist. In order to enable such a corporation to carry out the sole purpose for which it has existence it must have a further exercise of sovereign power in its behalf. Some city or village clothed, by delegation, with authority to exercise sovereign power possessed by the State must grant such corporation authority to enter upon its streets and alleys and construct and operate its road there. The power possessed by the State to attach as conditions to such a grant the performance of duties owing by a *quasi* public corporation to the public, and directly beneficial to

the public, may be exercised by a municipality in the exercise of the power by it possessed by delegation from the State to permit the use of its streets, alleys and public places by the corporation. It is clearly shown by the petition and ordinance the respondent company is operating a street railway. It was invested with corporate life and was granted corporate powers to enable it to serve the public as a public carrier of passengers. Its property is impressed with a public use, and it must exert its powers for the benefit of the public. It is not a private but a *quasi* public corporation, and owes it as a duty to the public to demand reasonable rates only for the transportation of passengers and to serve its patrons without unjust discrimination, and this duty may be enforced by the State acting directly or through a governmental agency. (*Rogers Park Water Co.* v. *Fergus, ante,* p. 571, and authorities cited.) The ordinance, the acceptance thereof and the enjoyment of the benefits of its provisions by the respondent company must be regarded as establishing, so far as the respondent company is concerned, and as estopping it to deny, that the exaction of a greater sum for the transportation of passengers from its stopping places in the village of River Forest to the city of Chicago than is demanded for the like service from stopping places on its line within the specified portion of the town of Cicero is an unreasonable exaction and unjust discrimination against those of the public who may desire to reach Chicago from the village of River Forest by way of the cars of the respondent company. That being established, compliance with the provisions of the ordinance in the respect named becomes a duty to the public the performance whereof is within the right and power of the village, acting as the agency of the State, to secure by means of the conditions incorporated in the ordinance. The fact the ordinance required the company should formally accept it as conditioned had no effect to render the grant a mere private contract. The State, through the village as its repre-

sentative, was acting, and the power which was exercised by the village was that of the sovereign. That which the ordinance required the company should do and should consent to do did not become mere contract obligations on the part of the company to perform acts beneficial to the village. The village, as a corporate entity, had no interest whatever in the acts to be performed. Compliance with the ordinance in the respect under consideration was not beneficial to the village in its corporate capacity, but was a duty to the public to be performed by the company for the benefit of the public. There is nothing in the nature of that duty rendering it impracticable to enforce the performance of it by the writ of *mandamus*, and in our view the writ may be invoked to secure observance by the respondent company.

Respondent, treating the duties imposed upon it as mere contract obligations, argues the undertakings are wholly without consideration. In the absence of the ordinance the respondent company had no power or right to enter upon the streets of the village and erect poles, string wires thereon and construct and operate its road by electricity upon and along such streets. These privileges constitute ample consideration, if any could be deemed necessary. The privileges granted the respondent company by the terms of the ordinance have been and are being fully enjoyed by it. It cannot be permitted to take and retain all advantages and benefits of the ordinance, and escape performance of duties to the public upon which its rights to such advantages and benefits are predicated upon the ground the ordinance and the duties imposed by it are *ultra vires* both the village and the respondent company. The plea of *ultra vires* will not, as a general rule, prevail when it will not advance justice, but will, on the contrary, accomplish a legal wrong; and it is a general rule that undertakings, though they be *ultra vires*, will be enforced against *quasi* public corporations if said corporations retain and enjoy the benefits

of concessions granted on condition such undertakings should be performed. *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309; *Kadish* v. *Garden City Building and Loan Ass.* 151 id. 531; *Eckman* v. *Chicago, Burlington and Quincy Railroad Co.* 169 id. 312.

Whether *mandamus* will lie to require the respondent company to transport passengers beyond its own line does not arise. It appears from the petition the respondent company has perfected running arrangements with other lines of railroad, and is engaged in transporting its passengers, by means of its own cars and the cars of connecting lines, to and around the "loop" in the city of Chicago, and that it offers such service at all points in the village of River Forest, and the complaint is, it exacts a greater rate of fare for twelve continuous rides from points in the village of River Forest to and around the "loop" in the city of Chicago than is charged for a like number of rides from the designated points in the town of Cicero, contrary to its duty and obligation under the ordinance. The purpose of the petition is not to require the respondent to make arrangements with connecting carriers to carry passengers beyond its own line, for such arrangements already exist, and the respondent company is engaged in the business of furnishing transportation from the village of River Forest to and from the city of Chicago, but the design of the writ is to prevent discrimination in rates charged at points in the village and in that portion of the town of Cicero specified in the ordinance.

There is no force in the point, vigorously pressed, that if *mandamus* will lie it cannot be granted at the application of the relator in this petition. The village, in its corporate capacity, has no interest in the enforcement of duties owing by the company to the public. As a corporate entity the village is not affected by compliance or non-compliance with the rates of fare charged or collected by the respondent from the passengers. The writ relates to a matter affecting the public. The people are

regarded as the real party, and it need not appear the relator has any legal interest in the result. It is enough he is a citizen, and is interested, as a citizen, in having the right enforced. (*County of Pike* v. *People*, 11 Ill. 202; *City of Ottawa* v. *People*, 48 id. 233; *Hall* v. *People*, 57 id. 307.) The demurrer must be and is overruled.

Counsel for respondent company ask that in case the demurrer be overruled it be allowed to raise an issue of fact, and in support say, "the company is not selling the twelve fares for one dollar, and was not at the time the petition was filed." The facts averred are, the respondent company did, on or about March 2, 1898, offer, and has since then offered, such tickets for sale from said points in said town of Cicero, and the petition set forth a copy of such tickets sold by the company and a copy of the following notice posted by the company in the cars operated by it, viz.:

"*Notice.*—On and after Wednesday, March 2, 1898, tickets will be sold—twelve rides for one dollar—by conductors on the cars of this company, *good for one continuous ride*, from stopping points in the town of Cicero over this line of the Suburban Railroad Company and the Lake Street Elevated railroad and around the Union loop in the city of Chicago, the use of the tickets to be governed by the rules of the respective railroad companies.                    J. M. ROACH,
                    *President Suburban Railroad Co.*"

The petition further avers the respondent refused to sell like tickets good from points in the village of River Forest. The facts which counsel say they desire to establish if an issue of fact is raised, it will be observed, do not meet the case made by the averments of the petition, but in truth amount to an admission the averments of the petition are true, but that the company had stopped selling the tickets at the time when the petition was, after leave given, filed in this court, and had not sold such tickets since the filing of the petition. The facts so stated in effect concede the averments of the petition to be true, and the entire argument of counsel for the

178—39

respondent is, it has full legal right to sell the commutation tickets from points in the town of Cicero and to refuse to sell such tickets from points in the village of River Forest. It is manifest the only real issues in the case are those of law raised by the demurrer. The statute does not govern the practice in *mandamus* suits begun in this court. (*People* v. *Thistlewood*, 103 Ill. 139.) This court, in its discretion, may or may not allow an issue of fact to be made after the case has been submitted on demurrer to the petition. (*People* v. *McCormick*, 106 Ill. 184.) It is manifest, in the exercise of a sound discretion we should proceed to final judgment on the issue of law on which both parties have been fully heard.

The judgment of the court is, a peremptory writ of *mandamus* issue commanding the respondent, said Suburban Railroad Company, that at all times when it shall sell or cause to be sold said tickets of twelve rides for one dollar, good for one continuous ride from any stopping point in the town of Cicero west of the east line of Central avenue, in said town, over the lines of said Suburban Railroad Company and the said Lake Street Elevated Railroad Company to and from any point on the Union loop in the city of Chicago, said Suburban Railroad Company shall also sell, or cause to be sold on demand, passenger tickets of twelve rides for one dollar each, good from any stopping point on its said railroad line in the village of River Forest, over the lines of said Suburban Railroad Company and the said Lake Street Elevated Railroad Company to and from any point on the said Union loop in the city of Chicago, with equal facilities for the purchase of said tickets, as prayed in the petition.                               *Writ awarded.*