THE PEOPLE *ex rel.* Albert Kocourek

*v.*

THE CITY OF CHICAGO AND SCHLESINGER & MAYER.

*Opinion filed December 18, 1901.*

1. MANDAMUS—*original jurisdiction of Supreme Court in mandamus is not exclusive.* Under section 12 of article 6 of the constitution circuit courts have original jurisdiction in *mandamus,* such cases being included in the term "all cases at law," and hence the original jurisdiction of the Supreme Court in *mandamus* is not exclusive, but is concurrent with that of the circuit courts.

2. SAME—*Supreme Court will not take original jurisdiction in all mandamus suits.* The original jurisdiction conferred by the constitution upon the Supreme Court to issue writs of *mandamus* is to be exercised to protect the rights, interests and franchises of the State and the rights and interests of the public; to enforce performance of high official duties affecting the public at large, and, in emergencies, in cases affecting local public interest or private right when there is no other adequate remedy and when the exercise of such jurisdiction is necessary to prevent failure of justice.

3. SAME—*Supreme Court will not permit its original to embarrass its appellate jurisdiction.* The principal jurisdiction of the Supreme Court being appellate, the exercise of its limited original jurisdiction, which it shares concurrently with the local courts, cannot be permitted to so crowd its docket and occupy its time as to interfere with the performance of its appellate duties.

4. SAME—*defendants should be sued in counties where they reside.* It is the policy of the law that parties shall be sued in the counties where they reside, and that both local and private controversies shall be first heard in the local courts, where there will be the least inconvenience and expense to the parties.

5. SAME—*Supreme Court may determine whether it will take original jurisdiction.* The Supreme Court is vested with a sound legal discretion to determine for itself, as the questions may arise, whether or not cases presented are of such a character as to call for the exercise of its original jurisdiction in *mandamus.*

6. SAME—*when facts do not call for exercise of Supreme Court's original jurisdiction.* The compelling, by *mandamus,* of the removal of a bridge across a public alley in a city, connecting the third stories of two buildings, both belonging to a single firm, which are upon opposite sides of such alley, is properly a matter for the local tribunals, leaving to the Supreme Court the correction of errors on appeal, if any intervene.

MAGRUDER, J., dissenting.

ORIGINAL petition for *mandamus.*

L. P. WILCOX, for relator.

CHARLES M. WALKER, Corporation Counsel, for respondent the city of Chicago.

MORAN, MAYER & MEYER, for respondent Schlesinger & Mayer.

Mr. JUSTICE CARTER delivered the opinion of the court:

At a former term, on application by the relator, leave was given to file a petition in this court for a writ of *mandamus* against the city of Chicago, to compel it, by its proper officers, to remove, or cause to be removed, a certain bridge or superstructure over and across a certain alley, alleged to be a public alley, in said city, constructed, with the permission of the corporate authorities of said city, across said alley by Schlesinger & Mayer, an alleged co-partnership, connecting the third stories of their buildings, they having buildings on each side of the alley which they used in their business of conducting a large mercantile establishment. Said Schlesinger & Mayer, upon leave given, became parties defendant and answered the petition, alleging that they are a corporation by that name, and stating reasons why the writ should not issue. The city of Chicago also answered, and the relator demurred to said answers. Afterward the defendants moved the court to dismiss the petition on the ground that the original jurisdiction of this court does not extend to that class of cases in *mandamus* which affect only the rights and interests of the local public or of individuals, and not those of the people of the whole State, or of the State in its corporate or sovereign capacity.

While this court has exercised original jurisdiction in cases of *mandamus* ever since the foundation of the State government, under the constitutions of 1818, 1848 and 1870, it does not appear from any reported case that the

question raised by this motion had ever been presented to this court for decision until it was raised in this case and others brought here about the same time,—that is, whether its original jurisdiction extends to all cases in *mandamus*, and is, in respect to them, concurrent with the jurisdiction of the circuit court, or is limited to such cases as directly affect the powers, rights or interests of the State in its sovereign character or of the people of the whole State, and also whether this court has a legal discretion to exercise its original jurisdiction, or not, in *mandamus* cases, or whether it is its constitutional duty to take jurisdiction of every *mandamus* case presented to it as a court of first resort.

Section 2 of article 6 of the constitution provides that "the Supreme Court shall consist of seven judges, and shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus*, and appellate jurisdiction in all other cases." So far as the provision of the constitution of 1870 confers original jurisdiction on this court in *mandamus* it does not differ materially from the provisions of the constitutions of 1818 and 1848. Section 12 of article 6 of the constitution of 1870 provides that "the circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law, and shall hold two or more terms each year in every county." It thus appears that the circuit courts of the State have original jurisdiction in *mandamus* cases, such cases being included in the term "all cases in law," and it follows that whatever may be the extent of the original jurisdiction of this court in *mandamus*, it is not exclusive, but is concurrent with that of the circuit courts. (*Hundley* v. *Comrs. of Lincoln Park*, 67 Ill. 559.) It is clear that the framers of the constitution intended that the jurisdiction of this court should be chiefly appellate, for the correction of errors in the decisions of other courts which were established or provided for, but deemed it wise to confer on the Su-

preme Court of the State original jurisdiction in a certain class of cases, viz., those relating to the revenue, *mandamus* and *habeas corpus,*—all of which are of themselves, or in their application may become, of great public importance, by securing the collection and the protection of the public revenues, by compelling the performance of high official duties, and by protecting the liberties of the individual citizen. The high character of this original jurisdiction is denoted, not only by the fact that it is conferred by the constitution on the court of last resort in the State, but by the subjects to which it relates and their association together in this provision of the constitution. *Noscitur a sociis.*

The same question now brought before us and fully argued here for the first time has been fully considered and decided in other States having similar constitutional provisions to our own. In the State of Wisconsin its constitution provided, in substance, that the Supreme Court, except as otherwise provided by the same instrument, should have appellate jurisdiction only; that it should have a general superintending control over all inferior courts; that it should have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari* and other original and remedial writs, and to hear and determine the same. Original jurisdiction was also conferred on the circuit courts of all matters, civil and criminal, not excepted in or prohibited by the constitution, and power was also given to the circuit courts to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto* and *certiorari.* And in *Attorney General* v. *Chicago and Northwestern Railway Co.* 35 Wis. 425, the Attorney General, on information filed in the Supreme Court, moved the court for a temporary injunction to restrain the railway company from demanding and receiving greater passenger and freight rates than those allowed by act of the legislature. The court, referring to the provision of the constitution conferring original jurisdiction on the Supreme

Court, held that said provision was designed to give to said court original jurisdiction of all questions affecting the sovereignty of the State, its franchises and prerogatives and the liberties of the people,—citing *Attorney General* v. *Blossom*, 1 Wis. 277. The court, speaking through Mr. Chief Justice Ryan, among other things said: "The other courts may, indeed, adjudicate public as well as private questions, and the appellate and superintending jurisdiction of this court may therefore reach public as well as private interests. But the framers of the constitution, for greater security, added to these, original jurisdiction over great public interests, for reasons already assigned. In a government like ours, public rights of the State and private rights of the citizens often meet, and may well be involved in a single litigation, so it may be in the exercise of the original jurisdiction of the court. But it is safe to say that the constitution is content to entrust purely private rights to the appellate and superintending jurisdiction of this court for the better and prompter and more authoritative protection of public interests. This is its primary and controlling object and character. * * * It is the duty of this court to confine the exercise of its original jurisdiction to questions *publici juris;* and hereafter the court will require all classes of cases, as it has hitherto done, some in which it is sought to put its original jurisdiction in motion to proceed upon leave first obtained, upon a *prima facie* showing that the case is one of which it is proper for the court to take cognizance." Then, in speaking of the jurisdiction of the circuit courts, it was said: "A great jurisdiction, comprehending, as C. J. Snow remarked in *Putnam* v. *Sweet*, the united powers of the English courts of the King's Bench, common pleas, exchequer and chancery. The same writs are granted to those courts as to this. It is impossible for a lawyer to suppose that they are granted in the same sense and with the same measure of jurisdiction to this court as to those courts. Such a

proposition would shock the legal sense of any profes-
sional man.    And the distinction is to be looked for, and
is readily found, in the general constitution and func-
tions of those courts and of this.    The writs are given
to the circuit courts as an appurtenance to their general
original jurisdiction; to this court for jurisdiction.    Those
courts take the writs with unlimited original jurisdiction
of them, because they have otherwise general original
jurisdiction.    Other original jurisdiction is prohibited to
this court, and the jurisdiction given by the writs is es-
sentially a limited one.    Those courts take the preroga-
tive writs as a part of their general jurisdiction, with
power to put them to all proper uses.    This court takes
the prerogative writs for prerogative jurisdiction, with
power to put them only to prerogative uses proper."

It had been said by the same court in *Attorney General*
v. *Blossom*, 1 Wis. 283, in reference to the constitutional
provision authorizing that court to issue writs of *quo*
*warranto:* "Contingencies might arise wherein the pre-
rogatives and franchises of the State, in its sovereign
character, might require the interposition of the highest
judicial tribunal to preserve them.    Other departments
might need its intervention to protect them from usur-
pation.    Indeed, various emergencies may have been con-
ceived in which this branch of the government and this
arm of the judiciary alone might be adequate to preserve
the balance of powers, to arrest usurped powers, fran-
chises and prerogatives, to quell resistance to authority,
to preserve the liberty of the individual citizen, and
shield the soverignty of the State itself from violation."

In *Attorney General* v. *City of Eau Claire*, 37 Wis. 400, on
an information for injunction to enjoin city officers from
entering upon the construction of a dam across the Chip-
pewa river, Chief Justice Ryan, in delivering the opinion
of the court, quoting with approval from *Attorney General*
v. *Blossom, supra,* said: "Prerogative writs often go in aid
of private right or local public right; but the original

jurisdiction of this court is not only limited to preroga-
tive writs, but is confined to prerogative cases. The word
properly implies sovereign right. * * * To warrant the
assertion of original jurisdiction here, the interest of the
State should be primary and proximate,—not indirect or
remote; peculiar, perhaps, to some subdivision of the
State, but affecting the State at large in some of its
prerogatives; raising a contingency requiring the inter-
position of this court to preserve the prerogatives and
franchises of the. State in its sovereign character, this
court judging of the contingency in each case for itself.
For all else, though raising questions *publici juris*, ordi-
nary remedies and ordinary jurisdiction are adequate,
and only where, for some peculiar cause, these are inade-
quate will the original jurisdiction of this court be ex-
ercised for protection of merely private or merely local
rights." See, also, *State* v. *Baker*, 38 Wis. 71.

And further: "As early as *May* v. *Keep*, 1 Chand. 285,
(2 Pin. 301,) approved in *Hurlbert* v. *Wilcox*, 19 Wis. 419,
this court refused a writ of *certiorari* because the circuit
court had jurisdiction. * * * In cases of *mandamus* the
court made a rule in 21 Wis. 694, and enforced in *State* v.
*Harlem*, 22 Wis. 101, applying, in terms, to cases of origi-
nal jurisdiction, that the writ should not issue here where
there is ample remedy in the circuit court. * * * These
cases rest, indeed, upon the concurrent jurisdiction of the
circuit court, but the distinction is practically the same.
In all cases of purely private or local interest the juris-
diction of the circuit court is *prima facie* adequate. If it
be inadequate in any case, it must generally be so be-
cause the interest in litigation is something more than
private or local. We cannot but confess the criticism of
counsel that many cases in this court, especially *quo war-
ranto*, are inconsistent with the rule now declared; * * *
but the jurisdiction in those cases passed *sub silentio*,
without attempt by bench or bar to define it or to limit
its exercise. We think it may be hoped in the future that

there will be more care and accuracy by counsel and court. It was suggested that we should establish general rules governing an original jurisdiction. That would be too bold an undertaking to venture on. Rules will arise, as cases come here, far more safely and properly than they could be prescribed in advance. We can only declare the views which influence us in passing upon this motion. * * * These are questions *publici juris,* as are title to local public office, performance of local official duty, use of local highways, maintenance of local public buildings, abuse of local power or franchise, and kindred local matters. But these are not generally questions directly involving the sovereign prerogative or the interest of the State at large, so as to call for the prerogative jurisdiction of this court. As a rule, no extraordinary jurisdiction is necessary or proper for them, the ordinary jurisdiction of the circuit court being ample. Practically, it would be impossible to take jurisdiction of them all here, and we intend to assume jurisdiction of none of them which are not taken out of the rule by some exceptional cause. When they are governed by some peculiarity which brings them within the spirit and object of the original jurisdiction of this court we will entertain them, otherwise they will be left to the circuit courts. And this we understand to be the true spirit and order of the constitutional grant of jurisdiction."

In *State* v. *St. Croix Boom Corporation,* 60 Wis. 565, the same views were reiterated. In that case an information in chancery was filed by the Attorney General to restrain the respondent from obstructing the St. Croix river. The court said: "If we entertain jurisdiction of the case the court might be called upon, with equal reason, to exert its original jurisdiction in all cases where similar obstructions existed, so that this court, instead of being an appellate tribunal to review the decisions of the circuit courts, would really assume and exercise the functions of those courts. It is safe to say that the exercise of

such a jurisdiction was never intended by the framers of the constitution to be conferred upon it. It would be inconsistent with the judicial system which was organized and established by the fundamental law."

In *State ex rel. Lamb* v. *Cunningham*, 83 Wis. 90, the doctrine of previous cases was re-affirmed, and it was held that the refusal of the Attorney General to bring suit did not prevent the court from entertaining the information on the relation of a private person. (See, also, *State ex rel.* v. *Shaughnessy*, 86 Wis. 646.) In some of the cases mentioned, the Supreme Court of Wisconsin held that while the writ of injunction was not a high prerogative writ, like *mandamus* and *quo warranto* was at common law, still, by its association with prerogative writs in the constitution, it was intended by the framers of that instrument to partake of the same characteristics, so far · as the Supreme Court was given jurisdiction to issue it.

The constitutions of the States of Missouri, Colorado and North Dakota are very similar to that of Wisconsin, and substantially the same doctrine has been announced and adhered to in those States. *Vail* v. *Dinning*, 44 Mo. 210, was a proceeding to contest the election of a circuit judge under a statute purporting to confer original jurisdiction in such cases on the Supreme Court, but it was held that the jurisdiction of that court was conferred by the constitution, and that the legislature had no power to add to it; and it was further said by the court: "This court was designed to be strictly appellate in its duties, character and functions, with certain marked and definite exceptions. The framers of the constitution doubtless saw that contingencies might arise when it would not only be fit, but indispensably necessary, that this court should interpose its process in the first instance. There may be occasions when not only the interests of the citizen but the safety and welfare of the State may depend upon the issuance from this tribunal of its orig-. inal remedial process, and for such exigencies provision

was made. *Habeas corpus, mandamus, quo warranto* pro-
hibition, etc., are high prerogative writs emanating from
this court by direct application and by authority of the
sovereign power of the State. They are only issued when
applied for in a proper case, and are wholly variant from
that process of summons or notice by which one party
brings an adverse party into court to determine a pri-
vate right or to settle a matter of ordinary litigation."

In *State ex rel. v. Stewart*, 32 Mo. 379, although the con-
stitution gave the Supreme Court original jurisdiction in
such a case, the court refused to grant leave to file an in-
formation in the nature of a *quo warranto*, and held that
it was within the discretion of the court to give or refuse
such leave, according to circumstances. The court said:
"One of the circumstances that in England and in this
country materially influences the exercise of this discre-
tion is the absence or existence of any other remedy, and
there are circumstances not merely growing out of the
nature of the office or franchise and the position of the
parties, plaintiffs and defendants, but depending on the
powers and peculiar jurisdiction of the courts to which
the application is made, which will influence the result
of the application." It was also further said in that case:
"The legislature have furnished this court with none of
the machinery for trying issues of fact, and in practice
such trials are altogether without precedent. These in-
formations, with all the forms, must progress through all
of the stages incident to any other writ. There are pleas
and demurrers and issues in law and in fact, trials by jury,
motions for new trial, in arrest of judgment and writs of
error. The issue of fact by the common law must be tried
in the county where the franchise is situated. (Tancred,
p. 3; Angell & Ames on Corp. sec. 762, p. 870.) If such
a proceeding is entertained by this court it must be con-
ducted solely according to the forms of the common law,
for neither the statute of William and Mary, nor of Anne,
is in force here; nor does our own statute apply to the

Supreme Court, but is exclusively confined to the circuit court." It was further announced that the court would not say that it had no power to send the issue down for trial or to summon a jury itself, for occasions might arise where the exercise of such a power might become necessary, but that as the circuit court of the proper county had jurisdiction and the parties were not remediless, and in view of their own appellate work, they would not assume jurisdiction of the case. See, also, *State ex rel.* v. *Lawrence,* 38 Mo. 534, and *State ex rel.* v. *Buskirk,* 43 id. 111, where similar views were expressed; and in the latter case the court said: "It is not claimed that there are any special reasons why the constitutional jurisdiction of this court in such cases should be exercised in the present instance. The remedy pointed out by the statute authorizing proceedings of this character in the circuit court ought to be followed in all cases, unless it should appear to the satisfaction of this court that there was a necessity for the interposition of its authority."

·In *State ex rel.* v. *County Court of Cooper County,* 64 Mo. 170, in original *mandamus,* the court said: "Parties in ordinary cases were not compelled to come to this court in search of such extraordinary remedies; that the trial courts were open to them; that suitors who have, by appeal or writ of error, brought up their causes to this court and had them docketed were of right entitled to precedence, whereof they should not be deprived in order to give place to those whose causes of action have but recently accrued, and who, if the application for these unusual writs and remedies were successful, would thereby gain an advantage and priority, in point of time, on the docket which they could never hope to attain by the usual course of precedence."

In *Wheeler* v. *Northern Colorado Irrigation Co.* 9 Col. 248, which was an application for leave to file a petition for *mandamus,* the Supreme Court, in refusing leave, said, in substance, that for it to take jurisdiction in cases involv-

ing private rights would mar the symmetry of the judicial system and impair the usefulness of the Supreme Court as a court of review; that it would render the Supreme Court a court of concurrent jurisdiction with inferior tribunals in a large class of cases where no adequate reason for the exceptional arrangement could be assigned. "We believe," said the court, "that original jurisdiction of the writs mentioned, except in cases presenting some special or peculiar inquiry, should not be here assumed save where the interest of the State at large is directly involved, where its sovereignty is violated or the liberty of its citizens menaced, where the usurpation or the illegal use of its prerogatives or franchises is the principal, and not a collateral, question. Some of these writs, including *mandamus,* have been in this country largely shorn of their prerogative character, so far as their general use is concerned; yet in the constitutional provision before us they are intended to furnish this court with an equipment powerful for the protection of the sovereign rights and interests of the State at large. We are clearly of the opinion that original jurisdiction should be here entertained only in cases involving questions *publici juris,* and that writs from this court should, in general, be put only to prerogative uses. Rare instances may occur when, owing to some peculiar emergency or exigency, although the sovereign power, prerogatives or franchises of the State are only indirectly drawn in question, a refusal here to take original jurisdiction would practically amount to a denial of justice. In such cases this court will sometimes issue its original process, depending on the circumstances of each particular case, to be determined by the court for itself,"—citing with approval *State* v. *Ashley,* 1 Ark. 309, and *State* v. *Page,* 25 id. 527, where similar views were expressed. And in *People* v. *Rogers,* 12 Col. 278, it was held that as to cases mentioned in the constitutional grant of original jurisdiction, although *publici juris,* the Supreme Court may

decline to assume jurisdiction when satisfied that the issues can be fully determined and the rights of all parties preserved and enforced in the lower courts.

In *People* v. *McClees*, 20 Col. 403, it was held, in an application to the Supreme Court for a writ of injunction to enjoin the Secretary of State from delivering certificates of election to certain persons as district judges, that the writ of injunction which the constitution authorized that court to issue in the exercise of its original jurisdiction was a jurisdictional writ, as contradistinguished from the ordinary writ in aid of jurisdiction otherwise acquired, and that to authorize that court to take jurisdiction the case made must disclose a question involving the franchises of the State in its sovereign capacity,—that is, public rights or interests, and not merely matters of private or individual concern; and as the case in question involved only a contest between individual claimants to a public office, the court would not take jurisdiction,—citing the Wisconsin and other cases.    See, also, *People ex rel.* v. *Clark*, 22 Col. 280.

The constitution of South Dakota is the same, in the respect mentioned, as that of Wisconsin, and in *Everitt* v. *Board of County Comrs.* 1 S. Dak. 365, a case of a similar character, the Supreme Court, in declining to take jurisdiction, among other things said: "To hold that this court should exercise its original jurisdiction and concurrently with the circuit court, except where adequate reasons are shown why this original power should be exercised, would impose a serious burden upon this court and greatly impair its usefulness as an appellate court, and in a measure defeat the primary and principal object of its creation. We are of the opinion, therefore, that original jurisdiction was conferred upon this court, to be exercised by it only in cases which, in the judgment of this court, call for its exercise.  *  *  *  It is not easy, if, indeed, it would be advisable, to define definitely all the cases or classes of cases in which this court will

exert its original powers. These must rest, as the constitution has left them, in the sound discretion of this court, to be exercised or denied as the circumstances of the given case may demand. It may, however, be proper to say that this original jurisdiction will not ordinarily be exerted to enforce a merely private or local right, where no sufficient cause is shown why application can not be made to a subordinate court. For the protection and enforcement of such rights the inferior courts are clothed with adequate powers, and to them the citizen must ordinarily look for such protection,"—citing *Gallardo* v. *Hannah;* 49 Cal. 136, *Menzies* v. *Board, etc.* 62 id. 179, and other cases. It was also said by the court that the jurisdiction of inferior courts "was intended to be, and is, adequate, and affords ample facilities to litigants, in all cases, for the redress and protection of such purely private rights. We may assume, then, that the enforcement of these private and local rights, for the determination of which inferior courts have been provided, subject to the appellate jurisdiction of the Supreme Court, was not in the mind of the framers of the constitution when they adopted section 3. But it was no doubt in the mind of that body that emergencies might arise where the protection of the prerogatives and franchises of the State in its sovereign character,—the prevention of the usurpation of its offices, the protection of its legally ordained offices from intrusion and invasion, the protection of the liberty of the citizen, the preserving pure and unimpaired the various departments of the government, the determination of controversies in which the people of the State, or a large part of them, were directly interested, and the disposition of matters which for some special cause could not properly be brought before an inferior court,—might require the intervention of the highest judicial tribunal of the State." See, also, *State* v. *Archibald,* 5 N. Dak. 359; *State* v. *Ashley,* 1 Ark. 279; *Johnson* v. *Reichert,* 77 Cal. 34; *State* v. *Lincoln Gas Co.* 38 Neb. 33; *Loranger* v. *Nararre,*

97 Mich. 615; *State* v. *School District*, 38 Neb. 237 and 510; *State* v. *Breese*, 15 Kan. 123; *State* v. *Tracy*, 94 Mo. 17; *State* v. *Williams*, 26 Ohio St.170; Merrill on Mandamus, sec. 215, p. 265; 19 Am. & Eng. Ency. of Law, (2d ed.) 297; High on Ex. Legal Rem. (3d ed.) secs. 177, 582.

As bearing upon the question of the discretion of a court of last resort to exercise, or not, its original jurisdiction in *mandamus*, Mr. High in the last above citation says: "Although the Supreme Court of a State may have original jurisdiction in *mandamus*, it may yet decline to exercise it and may remit the applicant to a subordinate court, when this course seems more conducive to the ends of justice."   The same views were expressed by the Supreme Court of Pennsylvania in *Commonwealth* v. *Baroux*, 36 Pa. St. 262, where, in refusing leave to file a petition for *mandamus*, the court said: "We have no doubt of our authority to allow it and to proceed to hear and determine the case, and that we ought to do so if there were no other adequate remedy.   But it is in our discretion to refuse it as an original case if there be an adequate remedy in another form in another court; and we must be cautious in allowing such original cases here, so that the time required for cases in error and appeal shall not be interfered with.   This is nothing but an ordinary case relating to the duty of a local or city officer, and has nothing special in its nature or its circumstances that requires us to take original cognizance."   So, also, in *State* v. *Breese*, 15 Kan. 123, (opinion by Mr. Justice Brewer,) it was held, in refusing an application for a writ of *mandamus*, that although the court had jurisdiction it would not exercise it, inasmuch as the district court also had jurisdiction, and no sufficient reasons were shown why the application was not made to the lower court, where the costs would be less than in the Supreme Court and where the parties could litigate at home.   Many other authorities might be cited, were it necessary, expressing similar views.

From the authorities in other States which we have referred to, the following general legal propositions may be deduced and may be regarded as settled doctrine in such States on the question raised in the case at bar:

*First*—That the jurisdiction of the court of last resort in such States is principally appellate; that its original jurisdiction is not a general one, like that conferred on the circuit or district courts, but is a limited one, and concurrent, as far as it extends, with those courts.

*Second*—That in conferring original jurisdiction by constitutional provision in such cases as *mandamus*, it was not contemplated that the Supreme Court would take jurisdiction of all *mandamus* cases which parties might think best to bring before it, but that such original jurisdiction was conferred that the court of highest authority in the State should have the power to protect the rights, interests and franchises of the State and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, and, in emergency, (of which the court itself is to determine,) to assume jurisdiction of cases affecting local public interests, or private rights, where there is no other adequate remedy and the exercise of such jurisdiction is necessary to prevent a failure of justice.

*Third*—That the Supreme Court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction.

While we may not agree with all that has been said in the cases cited and quoted from in other States, we are of the opinion that the general principles laid down are sound doctrine and are applicable to the constitutional grant of original jurisdiction to this court in *mandamus*. As applicable to *mandamus*, the constitution says, only, that this court shall have original jurisdiction in *mandamus* and appellate jurisdiction in all other cases.

Now, it has never been supposed that this provision precluded the appellate jurisdiction of this court in *mandamus* cases, but only in such *mandamus* cases as should not be heard in this court in the first instance. This court has always recognized the right of review in this court, on error or by appeal, in *mandamus* cases heard in the circuit courts to the same extent as in other cases, and it would be an unreasonable interpretation of this section of the constitution to say that this court has original jurisdiction in all *mandamus* cases and therefore no appellate jurisdiction in *mandamus*. A reasonable construction must be placed on this provision, and the law relating to *mandamus* as it was when the constitution was adopted may well be considered. At that time, section 10 of the Practice act and the act revising the law relating to *mandamus* had not been passed, and *mandamus* was regarded in this State, and always had been, as a high prerogative writ, as it was at common law. (*People* v. *Hatch*, 33 Ill. 9; *Comrs. of Highways* v. *People*, 66 id. 339; *Springfield and Illinois Southeastern Railway Co.* v. *County Clerk*, 74 id. 27.) After the passage of those acts, and in *People* v. *Weber*, 86 Ill. 283, it was said: "The writ of *mandamus* is not now, as formerly, a prerogative writ. It is nothing more, under our statute, than an ordinary action at law in cases where it is the appropriate remedy. Yet it is to be issued in the discretion of the court." But in *People* v. *Thistlewood*, 103 Ill. 139, we held that the statute regulating the practice in *mandamus* cases has no application to practice in the Supreme Court. It was designed to regulate the practice in the circuit courts, and not in this court. However, the practice in such cases in this court will be made to conform, as nearly as may be, to that of the circuit courts as regulated by statute. The summons will not be awarded as matter of course, but only upon cause shown by the petition, and the petition can be filed only upon leave granted for that purpose. See, also, to the same effect, *People* v. *Suburban Railroad Co.* 178 Ill. 594.

In *People* v. *Weber, supra,* the court was speaking of the effect of the statute in modifying the character of the writ as it existed at common law, making it conform to ordinary civil actions, but we have held that the grant of original jurisdiction by the constitution cannot be abridged or enlarged by the legislature. (*Campbell* v. *Campbell,* 22 Ill. 664; *Bryant* v. *People,* 71 id. 32.) As has been said of similar grants of jurisdiction in other States, the principal jurisdiction of this court is appellate, and the exercise of its limited original jurisdiction should not be allowed, when there are other courts having the same original jurisdiction, to so crowd the docket and occupy the time of the court as to interfere with the performance of its appellate duties.

It is the policy of the law that parties shall be sued in the county where they reside, and that both local and private controversies shall be first heard in the local courts, where there will be the least inconvenience and expense to the parties. We cannot allow a practice to be continued which has heretofore, to some extent, been allowed by the indulgence of the court until it has become burdensome not only to litigants but to this court as well, and has consumed much of its time which is necessary for the consideration of cases on error or appeal, by concentrating upon our docket a large number of cases which would otherwise be distributed among the different local courts. No jury is provided for this court to determine issues of fact, nor is it the rule to hear witnesses here, and the practice is to send such issues down to the local court for trial before a jury. Now, no reason, legal or otherwise, is perceived why such cases should not be brought, the pleadings settled, issues made, the trial had and judgment rendered in the proper local tribunal, leaving to this court, in the exercise of its appellate jurisdiction, the correction of errors only. It would be impracticable to adopt or announce any precise rule which would be applicable to all cases that may arise, nor shall

we attempt to do so; but the general rules hereinbefore stated will in most cases enable the bar to determine whether or not any particular case is a proper one for original cognizance in this court. At all events, these general rules will hereafter be enforced, and petitions for *mandamus* inconsistent with them will not be allowed to be filed originally in this court.

The motion of the defendants to dismiss the petition will be allowed, and the petition will be dismissed.

*Petition dismissed.*

Mr. JUSTICE MAGRUDER, dissenting:

Under the doctrine that the jurisdiction to issue the original writ of *mandamus*, conferred upon this court by the constitution, must be confined to prerogative cases brought for the purpose of redressing public grievances, and which affect the people of the State at large, the majority opinion holds, in substance, that, here, the application is made for the purpose of obtaining relief in a matter, which is purely private and local. I am unable to concur in this view.

The city holds the fee of the public streets in trust for the use of the people and the public. In permitting private parties to encroach upon the public streets for private purposes it is guilty of a violation of the trust, which it holds for the benefit of the people, even though such private parties pay for the privilege granted to them. The original writ of *mandamus* in this case is sued out for the purpose of compelling the city of Chicago to remove an encroachment, which it has permitted to exist in favor of private parties in violation of the trust so imposed upon it in favor of the public. The writ of *mandamus*, asked for in this case, is a writ to be issued against the city of Chicago as a municipality. The city, as a municipality, is an agency of the State, and holds the fee of the streets in trust, not merely for the people of Chicago, but in trust for the people of the State at large.

In *City of Chicago* v. *Rumsey*, 87 Ill. 348, which was an action on the case, brought against the city of Chicago for damages alleged to have been sustained to real estate in consequence of the construction of a tunnel under the Chicago river in LaSalle street, we said (p. 355): "We do not regard it of any practical importance whether it is more technically accurate to say the fee of this street is in the State, or in the city. If it shall be said to be in the corporation, there can be no pretense for saying that it is in it otherwise than as an agency—a mere creature of the State—existing only by authority of the legislature, and, at all times, under its paramount supervision and control, and if it shall be said to be in the State, it can only be said to be there for the purpose of holding it for a street of the city—and, in either case, the sole purpose and end to be attained is precisely the same,—the holding it for the uses of a street of the city for the benefit of the public—*not the citizens of the city alone, but the entire public of which the legislature is the representative.* * * * Cities, towns, etc., possess and can exercise only such authority and control in regard to their streets, as may be delegated by the legislature. They have no inherent power or authority in this respect, and can act only in subordination to the paramount authority of the legislature."

Inasmuch as the city of Chicago can exercise only such authority and control in regard to its public streets, and alleys, as is delegated to it by the legislature under the City Incorporation act which is its charter, it is fitting that the supreme judicial tribunal of the State, in the exercise of its prerogative power, should be called upon to compel the city to exercise such authority and control in conformity with the terms and spirit of its public trust, and thereby redress a public grievance which affects the people, not only of the city of Chicago, but of the State of Illinois, as represented by its legislature.

In *McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611, we said (p. 639): "It is not the city alone, or abutting property owners, that are concerned about the unlawful obstruction of a street of a city. *All the people of the State* are entitled to the use of such street as being a public highway, and are interested to have it maintained free from unlawful obstruction."

In *Smith* v. *McDowell*, 148 Ill. 51, we said (p. 62): "By the platting of the village the streets, in their entire width and length, were dedicated to the use of the public, as streets. The village thereby became seized in fee of the streets and alleys, for the use of the local and general public, holding them in trust for such uses and purposes, and none other. * * * These municipal corporations are instrumentalities of the State, exercising such powers as are conferred upon them in the government of the municipality. Their power is measured by the legislative grant, and they can exercise such powers only as are expressly granted, or are necessarily implied from the powers expressly conferred. The legislature, representing the great body of the people of the State, when no private right is invaded or trust violated, * * * may repeal the law creating them, or exercise such control in respect of the streets, alleys and public grounds within the municipalities of the State, as it shall deem for the interest of the people of the State."

The legislature may exercise such control in respect of the streets, alleys and public grounds within the city of Chicago, a municipality of the State, as the legislature shall deem for the interest of the people of the State. The legislature, instead of exercising such control, has delegated that control to the city of Chicago, which is a mere instrumentality or agency of the State. This court, in the exercise of its prerogative power, may issue the original writ of *mandamus* to compel an agency or instrumentality of the State to execute a trust, conferred

upon it by the legislature, which represents the people of the State at large.

Again, in *Byrne* v. *Chicago General Railway Co.* 169 Ill. 75, we said (p. 84): "The city is but an agency of the State and governs, within its sphere, for the State. The title to the streets is held by the city in trust for the benefit of the general public; and, in like manner, the government exercised by the city is exercised as an agency of the whole public, and for all the people of the State. A municipal corporation * * * is, within its prescribed sphere, a political power. The city of Chicago, to the extent of the jurisdiction delegated to it by its charter is but an effluence from the sovereignty of Illinois, governs for Illinois, and its authorized legislation and local administration of law are legislation and local administration by Illinois through the agency of that municipality."

In *Cicero Lumber Co.* v. *Town of Cicero*, 176 Ill. 9, we said (p. 21): " 'The legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject * * * to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places.' (2 Dillon on Mun. Corp.—4th ed.—sec. 656). 'The plenary power of the legislature over streets and highways is such, that it may, in the absence of special constitutional restrictions, vacate or discontinue them, or invest municipal corporations with this authority.' * * * While it is true that the public highways are for the use of the general public, it is at the same time true that the legislature is a representative of the public at large. As such representative, it may grant the use or supervision and control over the highways to a municipal corporation, so long as the highways are not diverted to some use, substantially different from that, for which they were originally intended. There is no special restriction in the constitution of this State upon the power of the legislature in this regard. A city or incorporated town not

only bears a property or private relation to the State, but it also bears a political relation thereto. In its political relation, it is merely an agency of the State. The municipal corporations of the State are the mere creatures of the State, and exist by the authority of the legislature and subject to its control. Hence, when a city or incorporated town holds a street for the benefit of the public, it holds it *for the benefit of that entire public, of which the legislature is the representative.* As the municipality is a mere agent of the State, the legislature can direct the manner, in which it shall control the streets within its limits. The property rights and easements, which the municipality has in public streets and ways, are held by it at the will of the legislature. Of course, this statement is subject to the further statement, that such property, as the municipality holds in its private capacity, is as much protected by the constitution as the property of the private citizen. But, so far as it holds property as a mere agency of the government of the State, the constitutional provisions above referred to have no application, because the State can control the agencies created by it for the purposes of government."

Again, in *People* v. *Suburban Railroad Co.* 178 Ill. 594, we said (p. 605): "The General Assembly, representing the people at large, possesses full and paramount power over all highways, streets, alleys, and like public places in the State. * * * The State does not, however, exercise directly that full paramount power which it possesses over streets, alleys, etc., but, in the distribution of governmental powers, the General Assembly adopted the policy of selecting the cities and villages of the State as governmental agencies and delegating to such municipalities the power to regulate and control the use of the streets, alleys, etc., within their respective limits. Such power thus delegated is exercised by the municipal authorities acting in behalf of the State for the benefit of the public."

193—34

In view of the authorities above quoted, it cannot be said that there is not here involved a primary and proximate interest of the people of the State, and although that interest is peculiar to a subdivision of the State known as the city of Chicago, yet it affects the State at large in one of its prerogatives, inasmuch as the legislature, representing the State at large, controls the streets and alleys through its agencies, the municipal corporations where such streets and alleys are located. (*Attorney General* v. *City of Eau Claire*, 37 Wis. 400). This court reserves a discretion to exercise original jurisdiction where the peculiar conditions, in specified cases, bring them within the spirit and object of its prerogative jurisdiction. (Ibid). In *People ex rel.* v. *Hatch*, 33 Ill. 9, it was said: "The writ of *mandamus* is a high prerogative writ, to be awarded in the discretion of the court." This court refrains from laying down any general rule as to all the contingencies, which will require its interposition by the exercise of its original jurisdiction to issue the writ of *mandamus*. Here, however, its issuance is proper because of the nature of the relief asked as above set forth. Hence, I think that the proceeding should be retained and not dismissed.