(No. 21195.— ▮▮▮▮▮▮▮▮
THE PEOPLE *ex rel.* Herman M. Seiler, by, etc., Petitioner,
*vs.* HENRY C. HILL, Warden, Respondent.

*Opinion filed April 23, 1932—Rehearing denied June 10, 1932.*

ORIGINAL petition for *habeas corpus.*

CHARLOTTE SLAVITT, for petitioner.

OSCAR E. CARLSTROM, Attorney General, and J. J.
NEIGER, for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

A writ of *habeas corpus* was sued out of this court to
obtain the release of Herman M. Seiler, who is confined in
the Illinois State Penitentiary at Joliet. He was convicted
at the November term, 1924, of the criminal court of Cook
county upon pleas of guilty to two indictments charging
forgery. It was ordered that his sentences run concurrently.
He was released on parole December 14, 1925, but was
ordered returned in April, 1926, for an alleged violation of
his parole agreement. On a hearing of the charge against

him his parole was revoked and he was returned to the penitentiary. On April 9, 1930, he was again paroled, and by an order of the parole board it was provided that he should serve his parole in the State of Michigan as an employee of William Boettcher. The parole agreement signed by himself and the chairman of the parole board stipulated that the relator would abstain from crime and obey the laws. A short time afterwards he returned to Illinois without permission of the parole board or the Department of Public Welfare, and on July 29, 1930, was arrested and placed in the Cook county jail on a charge of attempting to pass a fraudulent check. On August 1, 1930, a warrant was issued by the warden of the penitentiary charging him with having violated his parole. He was returned to the penitentiary August 7, 1930, and was given a hearing before the parole board on September 8, 1930. He was declared to be guilty of violating his parole by (1) returning to this State, and (2) attempting to pass a fraudulent check. The board ordered him given a "maximum X"—a term used by the board to designate that the offender shall remain within the penitentiary for the maximum term of his sentence. Seiler filed a petition in the criminal court of Cook county for a writ of *habeas corpus.* Upon a hearing he contended that he was improperly held as a parole violator, but the court found against him on that contention and remanded him to the warden of the penitentiary. The presiding judge requested that Seiler be given another hearing before the parole board. This request was, of course, gratuitous and a mere recommendation. However, Seiler was granted another hearing by the parole board, and on November 3, 1931, after due notice of such hearing, he personally appeared before a committee of the board and during his examination admitted he knowingly violated his parole agreement as charged. The committee made a report to the full board, and on consideration thereof he was declared to be a violator and again given a maximum X.

It is contended by the relator that the order of the parole board to re-imprison him in the penitentiary has the effect of revoking his parole, and that the power to revoke it is vested in the Department of Public Welfare and not in the parole board. The relator's brief states that this is the basic legal point upon which he claims the right to a release. The law as it existed immediately prior to 1917 gave the power to grant paroles to "the board of pardons and paroles," but in that year the board was abolished by an act of the General Assembly and its rights, powers and duties, including the power to grant and revoke paroles, were transferred to the Department of Public Welfare. In 1927 an act was passed creating the parole board, and by section 54a of the Civil Administrative Code it was provided that the parole board "shall exercise and discharge all the rights, powers and duties heretofore vested in the Department of Public Welfare in granting paroles, * * * but the supervision and after-care of persons so paroled shall remain in the Department of Public Welfare. The action of a majority of all the members of the board shall be the action of the board and no parole shall be granted except upon the concurrence of a majority of all of the members of the parole board, such concurrence to be recited in the records of the board." It is contended that under this section the right to grant a parole is vested in the parole board but the right to revoke a parole is in the Department of Public Welfare. It is therefore claimed that the action of the parole board in revoking Seiler's parole is void.

The act of 1917, above referred to, gave the Department of Public Welfare the right to grant paroles, and section 7 thereof provided that all prisoners released on parole shall at all times, until their final discharge, be considered in the legal custody of the officers of that department, with full power to re-take and re-imprison any person upon parole for a violation of the rules and regulations con-

cerning his release. The department by an executive order established what was known as the Division of Pardons and Paroles and delegated to it authority to grant and revoke paroles. Later the act of 1927 was passed, and it created a new body known as the parole board, consisting of a supervisor of paroles and nine other members. The philosophy of the last enactment on the subject of paroles was that there should be a separate organized body of officials within the Department of Public Welfare whose duty it is to determine when a prisoner is entitled to and may be released on parole. The law makes it the imperative duty of that body to consider and give weight to the record of the prisoner's conduct as kept by the warden, but no power of supervision over his conduct while he is in prison or while he is on parole is reposed in the parole board. The duty of supervision at all times is cast upon the Department of Public Welfare, the personnel of which is entirely different from that of the parole board. The theory seems to be that those duties which relate to the intended reformation and reclamation of offenders are to be performed by the department itself, but the determination whether an offender eligible to parole shall be confined in the penitentiary is a question for the exclusive decision of the parole board. This power to determine the question cannot be exercised without the right to grant paroles and to revoke them if occasion shall require. The parole board is a part of the Department of Public Welfare. Decisions in granting paroles as provided by section 7 and decisions upon hearings for revocation as provided by section 7a are in effect the decisions of the Department of Public Welfare, acting through the parole board and expressly committed to it.

It is urged that even though the parole board has the power to revoke a parole and re-imprison a violator, it has not lawfully done so in this case because the hearing in September, 1930, was conducted before only two members

of the parole board and the hearing in November, 1930, was conducted before only three members. This would be a forceful objection if a decision upon the ultimate questions involved had been made by a minority of the board, but the return shows that the decisions were not, in fact, made by a minority but were concurred· in by the full membership. In order for the business of the board to be efficiently and expeditiously transacted and to the end that all inmates of the State's various penal institutions might have opportunity to be heard in matters involving paroles, the parole board, upon its organization, adopted a practical rule to appoint three committees, each consisting of three members of the board, to conduct monthly hearings at the institutions. The committees are required to make a report to the full board of each hearing, including the testimony of the witnesses, and no order affecting any prisoner, parolee or parole violator shall be made without the action and concurrence of the entire board or a majority thereof. This rule of procedure was fully complied with on both hearings, and the decisions declaring the relator a parole violator and giving him a rating of maximum X were the results of the concurrence of all the members of the parole board.

The contention that the relator was not given a speedy hearing after his arrest has little force. He was undoubtedly entitled to such a hearing, but whether or not there was any unreasonable delay does not appear. Whether the hearing was delayed to suit the convenience of the board or of the relator we are not informed. The report of the committee was made after the hearing on September 8 to the entire board, and on September 22 the board entered its decision and made it a matter of record.

Although the point is not included within the list of "contested issues" contained in relator's brief, nevertheless it is suggested that he has in some way been deprived of the right of time earned for good conduct in prison. The order entered by the parole board is not susceptible of

any such construction. The parole board has nothing whatever to do with that subject matter and did not undertake to deal with it.

The parole board acted within the authority vested in it by statute and the hearings were conducted in substantial compliance with the law. It is therefore ordered that the relator be remanded to the custody of the respondent.

*Relator remanded.*