(No. 22484.—

THE NORTH CHICAGO HEBREW CONGREGATION, Appellant,
*vs.* THE BOARD OF APPEALS OF COOK COUNTY, Appellee.

*Opinion filed December 20, 1934.*

Shaw, J., specially concurring.

Harold R. Schradzki, (Roscoe C. Bonjean, of counsel,) for appellant.

Thomas J. Courtney, State's Attorney, (Hayden N. Bell, Jacob Shamberg, William P. Kearney, and Brendan Q. O'Brien, of counsel,) for appellee.

Mr. Justice Orr delivered the opinion of the court:

The North Chicago Hebrew Congregation, a corporation not for profit, is here, as appellant, challenging the validity of a finding of the board of appeals of Cook county, appellee, denying exemption from taxation to certain real estate owned by appellant in Chicago. The matter is before this court because of the provisions of section 35e of "An act for the assessment of property and providing the means therefor," etc., in force July 1, 1898, as subsequently amended. (Smith's Stat. 1933, chap. 120, par. 314e.) The last and pertinent part of this section provides, in substance, that if the board of appeals in counties of over 250,000 inhabitants decides that property claimed to be exempt is liable to be taxed and the party aggrieved prays an appeal, a brief statement of the facts in the case shall be made by the county assessor under the direction

of the board and transmitted to the State Tax Commission, "who shall present the case to the Supreme Court, in like manner as hereinbefore provided," and the court shall hear and determine the matter as the right of the case may be.

Before delving into the facts it becomes necessary for us to determine whether the subject matter brings the controversy within either our appellate or original jurisdiction; and further, in case our original jurisdiction is involved, to then determine whether the matter concerns a question *publici juris* sufficient to justify the exercise of our discretion in favor of taking the case.

It is readily apparent why this is not a case wherein we can properly exercise the appellate jurisdiction of this court. The board of tax appeals and the State Tax Commission are purely administrative bodies, from which an "appeal" is granted to this court. Strictly speaking, the use of the word "appeal" is unfortunate, as these administrative bodies are non-judicial in character, and there can not be an appeal from a non-judicial branch of the administrative arm of the government to this court. This was the effect of our holding in *Maxwell* v. *People*, 189 Ill. 546, under facts similar to those existing here. In that case paragraph 4 of section 35 of the Revenue act of 1898 (Hurd's Stat. 1899, chap. 120, sec. 329, par. 4,) provided for an appeal by the aggrieved property owner from a finding of the board of review to the State Auditor, who could then present the facts to the Supreme Court for a decision. In deciding that this procedure was not an appeal but was an exercise of our original jurisdiction we there said: "It is a mistake to suppose that paragraph 4 of section 35 provides for an appeal from the decision of the board of review upon this subject to the Supreme Court of the State. * * * The board of review is a non-judicial body. There can be no such thing as an ap-

peal from the board of review to the Supreme Court of the State, which is a judicial body. * * * Appellate jurisdiction is the attribute of a court created for reviewing the decisions of inferior courts and not of inferior bodies non-judicial in character. The Supreme Court entertains the case, presented to it by the Auditor under paragraph 4 of section 35, in the exercise of its original jurisdiction. * * * The remedy, therefore, prescribed by paragraph 4, so far as it is a purely judicial remedy, begins only upon the presentation of the case by the Auditor to the Supreme Court." Likewise it was held in *City of Aurora* v. *Schoeberlein,* 230 Ill. 496, that an appeal from a non-judicial body to a court could not be countenanced, and this same principle was affirmed in *Conover* v. *Gatton,* 251 Ill. 587. In *Federal Radio Com.* v. *General Electric Co.* 281 U. S. 464, a similar question was presented to the Supreme Court of the United States. It was provided by the radio acts of 1927, 1928 and 1929 that if an application for a broadcasting license should be denied by the radio commission an appeal might be taken to the Court of Appeals of the District of Columbia. An order was entered by that court reversing the previous order of the commission and the Supreme Court of the United States granted a writ of *certiorari*. After considering the matter the writ was dismissed for the reason that the proceeding between the commission and the company was not a "case or controversy" in the sense of the judiciary article but was merely an administrative proceeding. The court pointed out that the powers given to the commission respecting the granting or renewal of station licenses were clearly administrative, and that the provision for the appeal to the court did no more than make the court a revising agency in the same field. It was pointed out that the procedure was largely the same as that which had been many times passed on by the court in connection with patent appeals, which have long and uniformly been held to be administrative

rather than judicial. The opinion also distinguishes those cases in which the court had taken jurisdiction for the purpose of reviewing decisions of the board of tax appeals upon the ground that in such cases there was presented for consideration either the right of the United States to the payment of a tax claimed to be due, or a tax-payer's right to have refunded to him money which he had previously paid to satisfy a tax erroneously collected. Either of these would call for a judicial and binding determination of the matters presented, thereby making either a case or controversy within the scope of the judicial power of the court. In its opinion the court used the following language: "But this court cannot be invested with jurisdiction of that character, whether for purposes of review or otherwise. It was brought into being by the judiciary article of the constitution, is invested with judicial power only, and can have no jurisdiction other than of cases and controversies falling within the classes enumerated in that article. It cannot give decisions which are merely advisory, nor can it exercise or participate in the exercise of functions which are essentially legislative or administrative."

From the authorities above referred to, it must be apparent that the appellate jurisdiction of this court cannot legally be invoked by an appeal from an administrative body but must be exercised by way of review of a judgment or decree of some inferior court. And this is true even though the so-called statutory appeal pertains to a matter directly relating to the revenue. A part of section 35e in certain cases purports to give the State Tax Commission the right to apply to this court for an order annulling a decision of the board of appeals—in other words, calls this court in as an umpire to settle disputed questions of fact where the board and commission have disagreed. Another part of the section, as in the present case, purports to allow a direct appeal here by the State Tax Commission in behalf of an aggrieved property owner.

These portions of section 35e are void because they evidence a legislative intent to fasten administrative duties upon the Supreme Court and provide for direct appeals to this court from the findings of a non-judicial body.

Since the present controversy cannot properly be reviewed by us in the exercise of our appellate jurisdiction, it remains to be seen whether the matter is of such character and public interest as would justify its review in the exercise of our original jurisdiction. Section 2 of article 6 of the constitution of 1870 clothed this court with original jurisdiction in the following language: "The Supreme Court * * * shall have original jurisdiction in cases relating to the revenue, in *mandamus,* and *habeas corpus,* and appellate jurisdiction in all other cases," etc. This constitutional provision has never been construed to mean that the Supreme Court must accept original jurisdiction of all cases presented to it relating to the revenue or in *mandamus* or *habeas corpus.* A wide discretion has been exercised in our taking original jurisdiction of such cases, complemented by our approval of legislation which vested concurrent jurisdiction of like character in the lower courts. We have consistently upheld legislation which has vested in the county and circuit courts the power to hear and determine actions relating to the revenue. In *Hundley & Rees* v. *Lincoln Park Comrs.* 67 Ill. 559, this court was called upon to construe section 18 of article 6 soon after the constitution of 1870 was adopted. That section gave jurisdiction to the county courts to hear and determine matters concerning the collection of taxes and assessments. Holding that the section did not vest exclusive jurisdiction in the county courts of the State the opinion continued: "By the second section of the same article of the constitution it is provided that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus.* Yet who doubts that circuit courts, being courts of general jurisdiction, can be

clothed by statute with the power to hear and determine actions on the bonds of collectors of the revenue and award writs of *mandamus* and *habeas corpus?* The latter power is expressly conferred upon them by statute." .

That the jurisdiction of this court in *mandamus* is concurrent and not exclusive was definitely stated in *People* v. *City of Chicago,* 193 Ill. 507, and equally so in actions of *habeas corpus* in *People* v. *Siman,* 284 id. 28. In *People* v. *City of Chicago, supra,* we said that the framers of the constitution "intended that the jurisdiction of this court should be chiefly appellate, * * * but deemed it wise to confer on the Supreme Court of the State original jurisdiction in a certain class of cases, viz., those relating to the revenue, *mandamus* and *habeas corpus,* all of which are of themselves, or in their application may become, of great public importance." After a careful survey and discussion of pertinent decisions in this and other States, we came to the conclusion in the last cited case that the framers of the constitution did not intend that the Supreme Court should take jurisdiction of all cases of *mandamus* brought before it. This was the reasonable view to take, we there held, because the original jurisdiction given would enable this court to protect "the rights, interests and franchises of the State and the rights and interests of the whole people to enforce the performance of high official duties affecting the public at large, and, in emergency, (of which the court itself is to determine,) to assume jurisdiction of cases affecting local public interests or private rights where there is no other adequate remedy and the exercise of such jurisdiction is necessary to prevent a failure of justice." It was further held that the Supreme Court is vested "with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction." In *People* v. *Board of Trade,* 193 Ill. 577,

we refused to take original jurisdiction to issue a writ of *mandamus* involving merely private rights or interests alone. Our previous quotation from *Hundley & Rees* v. *Lincoln Park Comrs. supra,* was quoted with approval in the *Board of Trade case.*

From these authorities it would seem well settled that this court has power, in the exercise of its own discretion, to determine for itself in what matters it will exercise its original jurisdiction. The original jurisdiction of this court is, and will be, exercised (1) to protect the rights, interests and franchises of the State or the rights and interests of the whole people and to enforce the performance of high official duties which affect the public at large; and (2) when an emergency exists, (the existence or non-existence of which this court alone determines,) to protect local public interests or private rights where there is no other adequate remedy or where it is necessary to prevent a failure of justice. Clearly the case at bar does not fall within either of these two divisions. Here no emergency exists and only a private right is involved. Further, the appellant was not barred from making use of another remedy—*i. e.,* to object in the county court to the collecter securing a judgment and order of sale for delinquent taxes. The same plea that the property of appellant was exempt from taxes under the law could have been there interposed. If judgment had been taken, after the objection had been considered, an appeal (judicial one) could have been taken to this court. By this approach our appellate jurisdiction would have been invoked to review a judgment of an inferior court.

The duties of this court are, and were intended to be, chiefly appellate in their nature. We are therefore opposed to an assumption of original jurisdiction of matters which in their cumulative effect would ultimately lead to a congestion of the docket and cause serious interference with our appellate duties. The present controversy pos-

sesses none of the attributes which, as we have above pointed out, entitle it to consideration in the exercise of our original jurisdiction.

The cause is therefore dismissed. *Cause dismissed.*

Mr. JUSTICE SHAW, specially concurring:

I concur in the judgment dismissing the foregoing proceeding but cannot agree that there is any element of discretion involved as to whether this court could take jurisdiction if it wished to do so. In my opinion we have no jurisdiction, and that section 35*e*, referred to in the majority opinion, which seeks to confer such jurisdiction upon us, is unconstitutional and void.

A careful examination of section 35*e* discloses that no procedure is provided for therein which could constitute due process of law, that no final judgment rendered under that section could become *res judicata,* and that our opinion, if we give one, will be nothing more than advisory to the executive department of government.

It is provided that if the board of appeals shall determine that any property claimed to be exempt from taxation is not liable to taxation and the question as to such liability has not previously been judicially determined, then the decision of the board shall not be final unless approved by the State Tax Commission. The next provision is that in all such cases the county assessor, under the direction of the board, shall make out and forward to the tax commission a full and complete statement of all of the facts in the case. If the tax commission is "satisfied" that such property is not liable to taxation it shall notify the board of appeals of its approval of the decision of the board and the assessment shall be corrected accordingly. Upon the same certificate, if the tax commission is "satisfied" that the property is liable to taxation, it is required to advise the board of appeals of its objections to the previous decision of the board and give notice to the board that it will

apply to this court for an order to set aside and annul the decision of the board. The next sentence is, "upon receipt of such notice the clerk shall notify the person·making the application aforesaid." The act goes on to provide that the tax commission shall then file in this court a certified statement of the facts certified as aforesaid, together with its objections thereto, and that this court shall hear and determine the matter as the right of the case may be. If the board of appeals, on the other hand, decides that property claimed to be exempt is liable to be taxed, and the "party aggrieved" at the time prays an appeal, a brief statement of the facts in the case shall be made by the county assessor under the direction of the board and transmitted to the tax commission, which shall present the case to this court in like manner as above provided.

It cannot be questioned but that it is our original rather than our appellate jurisdiction which is sought to be invoked by section 35e of the statute, as there has been no prior decision of any court. Inasmuch as we draw our power from the constitution and have none except what is given us by that instrument, we can have no jurisdiction in this matter unless it is a "case." (Const. 1870, art. 6, sec. 2.) Nowhere are we given power to pass upon moot questions or to give opinions which are advisory, only, to officers in the executive or legislative department of government. If this proceeding is not a "case" within the meaning of the constitution we are entirely without jurisdiction and cannot exercise any except by usurpation.

Is this proceeding, then, a "case," within the constitutional intendment? This term as used in the constitution of the United States embraces claims or contentions of litigants brought before the court for adjudication by regular proceedings established for the protection or enforcement of rights or the prevention, redress or punishment of wrongs, and whenever the claim or contention of a party takes such a form that the judicial power is capable

of acting upon it, it has become a case or controversy. (Black's Law Dict.; *Interstate Commerce Com.* v. *Brimson*, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. ed. 1047; *Smith* v. *Adams*, 130 U. S. 167, 9 Sup. Ct. 366, 32 L. ed. 895.) Bouvier defines "case" as a question contested before a court of justice; an action or suit at law or in equity,—citing *Martin* v. *Hunter*, 1 Wheat. (U. S.) 352. A case is a suit in law or in equity instituted according to the regular course of judicial proceedings. (*Pacific Steam Whaling Co.* v. *United States*, 187 U. S. 447, 23 Sup. Ct. 154, 47 L. ed. 253.) There must be a plaintiff capable of suing, a defendant who has no personal exemption from suit, and a cause of action cognizable in the court. (*United States* v. *Lee*, 106 U. S. 196, 1 Sup. Ct. 140, 27 L. ed. 171.) The word is synonymous with "cause," and is not to be construed as meaning merely a special proceeding. *Beecher* v. *Allen*, 5 Barb. (N. Y.) 169.

The case of *Muskrat* v. *United States*, 219 U. S. 346, 31 Sup. Ct. 250, is one which is enlightening upon the point we are considering. It contains a very complete review of the authorities on the point from the year 1792 down to the date of the decision, which was in 1910, and is worthy of our careful consideration. The proceedings in that case were begun under the supposed authority of an act of Congress of March 1, 1907. That act purported to authorize certain Cherokee Indians, on their own behalf and on behalf of others similarly situated, to institute certain suits in the court of claims of the United States to determine the validity of any act of Congress passed subsequent to the original Allotment act, attempting to increase or extend the restrictions upon alienation, encumbrance or the right to lease the allotments of lands of Cherokee citizens or to increase the number of persons entitled to share in the final distribution of the lands and funds of the Cherokees. The act further provided that jurisdiction was thereby conferred upon the court of claims, with

the right of appeal by either party to the Supreme Court of the United States to hear, determine and adjudicate each of said suits; that the suits brought thereunder should be brought on or before September 1, 1907, against the United States as a party defendant, and for the speedy disposition of the questions involved it was provided that preference should be given by the courts and the Attorney General, who was by the act charged with the defense of the suits. The act further provided: "Upon the rendition of final judgment by the court of claims or the Supreme Court of the United States denying the validity of any portion of the said acts authorized to be brought into question in either or both of said cases, the court of claims shall determine the amount to be paid the attorneys employed by the above named parties in the prosecution thereof for services and expenses and shall render judgment therefor, which shall be paid out of the funds in the United States treasury belonging to the beneficiaries under the said act of July 1, 1902." This act (34 Stat. at Large, chap. 2285, 1015, 1028,) was the authority for the maintenance of the suits. The Supreme Court in its opinion by Mr. Justice Day raised the question of whether or not it had jurisdiction to entertain the proceedings, and stated that the answer to that question depended upon whether the jurisdiction conferred or attempted to be conferred was within the power of Congress, having in view the limitations of the judicial article of the constitution, which jurisdiction, like our own, is limited to "cases." U. S. const. art. 3, secs. 1, 2.

In the *Muskrat case, supra,* the court points out that as early as 1792 an act of Congress undertook to provide for the settlement of claims of widows and orphans in connection with invalid pensions, and purported to devolve upon the circuit courts of the United States the duty of examining proofs, of determining what amount of monthly pay would be equivalent to the disability ascertained, and

to certify the same to the Secretary of War. It was said that (see foot-note to *Hayburn's case,* 2 Dall. 409,) "by the constitution of the United States the government thereof is divided into three distinct and independent branches, and that it is the duty of each to abstain from and to oppose encroachments on either; that neither the legislative nor the executive branches can constitutionally assign to the judicial any duties but such as are properly judicial and to be performed in a judicial manner; that the duties assigned to the circuit courts by this act are not of that description, and that the act itself does not appear to contemplate them as such, inasmuch as it subjects the decisions of these courts made pursuant to those duties, first to the consideration and disposition of the Secretary of War and then to the revision of the legislature, whereas by the constitution neither the Secretary of War, nor any other executive officer, nor even the legislature, are authorized to sit as a court of errors on judicial acts or opinions of this court." The court in the *Muskrat case, supra,* then points out that in 1793 President Washington and Secretary of State Jefferson addressed a communication to the justices of the Supreme Court soliciting their views upon the question whether their advice to the executive would be available in the solution of important questions of the construction of treaties, laws of nations and laws of the land, which the Secretary of State said were often presented under circumstances such as to not give a cognizance of them to the courts, and the Supreme Court answered President Washington saying that in consideration of the lines of separation drawn by the constitution between the three departments of government they could not be so called upon. The court in the *Muskrat case* then refers to the last judicial act of Chief Justice Taney, in *Gordon* v. *United States,* reported in an appendix to 117 U. S. 697, which gives a very clear exposition of the subject. It also refers to and quotes from the case of *Baltimore and Ohio*

*Railroad Co.* v. *Interstate Commerce Com.* 215 U. S. 216, 54 L. ed. 164, 30 Sup. Ct. 86. The language of Chief Justice Marshall in *Osborn* v. *Bank of United States,* 9 Wheat. 819, referring to the third article of the constitution in the following language, is quoted: "This clause enables the judicial department to receive jurisdiction to the full extent of the constitution, laws and treaties of the United States when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the constitution declares that the judicial power shall extend to all cases arising out of the constitution, laws and treaties of the United States." After reviewing a number of other cases the court disposed of the matter before it in the following language:

"It is therefore evident that there is neither more nor less in this procedure than an attempt to provide for a judicial determination, final in this court, of the constitutional validity of an act of Congress. Is such a determination within the judicial power conferred by the constitution as the same has been interpreted and defined in the authoritative decisions to which we have referred? We think it is not. That judicial power, as we have seen, is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress relied upon by one or the other of such parties in determining their rights is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within con-

stitutional authority, but, in fact, beyond the power delegated to the legislative branch of the government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a 'case' or 'controversy,' to which, under the constitution of the United States, the judicial power alone extends. It is true, the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the government or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts, in fact, to no more than an expression of opinion upon the validity of the acts in question. Confining the jurisdiction of this court within the limitations conferred by the constitution, which the court has hitherto been careful to observe and whose boundaries it has refused to transcend, we think the Congress, in the act of March 1, 1907, exceeded the limitations of legislative authority so far as it required of this court action not judicial in its nature within the meaning of the constitution."

In the case of *Fairchild* v. *Hughes*, 258 U. S. 126, 42 Sup. Ct. 274, a citizen of New York brought suit in the District of Columbia against the Secretary of State and the Attorney General, praying that the suffrage amendment to the constitution of the United States be declared unconsitutional and void and that the Secretary of State be

restrained from issuing any proclamation declaring it to have been ratified. It was also prayed that the Attorney General be restrained from enforcing it, with a prayer for general relief. It was held that notwithstanding there were parties plaintiff and defendant and relief prayed, the matter was not a "case" such as would confer judicial power on the Federal court and that the suit could not be maintained. The court, speaking through Mr. Justice Brandeis, said: "Plaintiff's alleged interest in the question submitted is not such as to afford a basis for this proceeding. It is frankly a proceeding to have the nineteenth amendment declared void. In form it is a bill in equity, but it is not a case within the meaning of section 2 of article 3 of the constitution, which conferred judicial power on the Federal courts, for no claim of plaintiff is 'brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights or the prevention, redress or punishment of wrongs.'" The case of *Muskrat* v. *United States, supra,* is cited.

The *Muskrat case* is again referred to and approved by the Supreme Court in *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 279 U. S. 716, in which the court held that it had jurisdiction; that the proceeding before it, where a tax-payer appealed for a judicial review of a decision of the United States board of tax appeals, was a case, the necessary result of the judgment being that the tax-payer would or would not have to pay a certain sum of money. After referring to the *Muskrat case* and the case of *Osborn* v. *Bank of United States, supra,* the court said: "In the case we have here there are adverse parties. The United States or its authorized official asserts its right to the payment by a tax-payer of a tax due from him to the government, and the tax-payer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. That makes

a case or controversy, and the proper disposition of it is the exercise of judicial power." In *Federal Radio Com. v. General Electric Co.* 281 U. S. 464, 50 Sup. Ct. 389, the distinction was drawn between the *Old Colony Trust Co. case, supra,* and the one being considered, and it was held that the granting or refusal of a radio license was merely an administrative and not a judicial act.

In order to constitute a case the conflicting claims of adverse parties must be presented to a tribunal by such due process of law as to permit the court to make a binding judicial determination of the questions involved. The proceeding before us is lacking in all of these essential attributes. First, there are no conflicting claims. There is, at most, a disagreement between two administrative agencies in the executive department of government. The argument starts, according to the statute, when the board of appeals disagrees with the State Tax Commission as to whether or not a piece of real estate is subject to taxation, and this disagreement is the foundation of the procedure. Here are no adverse parties—merely two administrative agencies differing with each other and needing legal advice. Their duties and their interest in the subject matter are identical—*i. e.,* the administration and enforcement of the revenue laws. Neither can they be parties. The tax commission is neither an entity nor a corporation but is created expressly as an executive and administrative board. (Smith's Stat. 1933, chap. 127, par. 5.) Its powers are detailed and explicitly set forth in paragraph 340 of chapter 120. The board of appeals in counties of more than 250,000 population is created by paragraph 311a of chapter 120 and its powers are therein described and limited. Like the tax commission, it has no existence as an entity. We therefore have in this proceeding neither competent parties nor adverse interests. Second, the act fails to provide any due process of law for presenting any ques-

tion to us for other than an advisory opinion. There is no provision for any judicial determination of the facts, but only that "the State Tax Commission shall then file in the Supreme Court a certified statement of the facts certified as aforesaid," and the "aforesaid" refers back to the earlier provision that "in all such cases the county assessor under the direction of the board, shall make out and forward to the State Tax Commission a full and complete statement of all the facts in the case." It requires no argument to demonstrate that this is not even a pretended judicial determination of anything, and that any answer predicated thereon would be no more than our legal opinion founded upon an arbitrary assumption of facts. Neither is there any provision in the act for the issuance or service of process. There is a vague statement in the act that "upon receipt of such notice [from the tax commission to the board of appeals] the clerk shall notify the person making the application aforesaid." The sentence is meaningless, because there is no previously mentioned application. There is nothing to indicate what clerk is meant, what the notice is to contain, whether or not it is to be in writing, to whom it is to be given nor within what time. Neither is there any provision as to the manner or means by which it is to be served or sent. Further, there is no apparent reason for giving any notice, because there is no provision for forming any issue, receiving any evidence, the filing of any brief or argument, nor opportunity of any kind to be heard. This is not due process of law and presents nothing to us in such form as to permit our judicial power to make a binding determination of any question. Our decision would not become *res judicata,* and we would leave the owner of the property exactly where we found him, with his right to object to the tax unimpaired by our advisory opinion.

The constitution provides for an Attorney General. (Const. art. 5, sec. 1.) He is the chief law officer of the

State and the sole official adviser of the executive officers and of all boards, commissions and departments of the State government, both in and out of court. (*Fergus* v. *Russel*, 270 Ill. 304.) The question certified to us by the State Tax Commission is precisely of the type that should be referred to the Attorney General, who is charged with the duty of giving advisory opinions *ex parte* and upon assumed rather than judicially determined statements of fact. We draw our power from the judicial article of the constitution and we have none except that which is so given to us. That power does not include the giving of advisory opinions. If we should assume jurisdiction in this proceeding, no reason is apparent why all of the advisory duties of the Attorney General might not be shifted to this court upon hypothetical or arbitrarily assumed statements of fact. In my opinion we are clearly without any jurisdiction and there is no question of discretion involved.

As to the holding that we have a discretion as to whether or not we will take this case, I am entirely unable to agree with the majority opinion. In all of the cases cited and relied upon, this court had a concurrent jurisdiction with some other court in addition to its original jurisdiction. In each of them, when we declined to act, the parties were left with an open door to another court having power to act. No such situation is presented by the statute in question. Jurisdiction either exists in this court or nowhere, as there is no other provision attempted to be made. Inasmuch as I am of the opinion that we have no jurisdiction, I believe the whole of section 35*e* attempted to be added by the act of 1932 to the Revenue act of 1898 is unconstitutional and void.