(No. 24188.—
THE PEOPLE *ex rel.* Dorothy Michaels, Petitioner, *vs.* A. L. BOWEN, Director of the Department of Public Welfare, *et al.* Respondents.

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

John G. Friedmeyer, G. E. Price, and A. M. Fitz-gerald, for petitioner.

Otto Kerner, Attorney General, and A. B. Dennis, for respondents.

Mr. Justice Shaw delivered the opinion of the court:

James Michaels was convicted in the circuit court of Randolph county September 26, 1928, under an indictment charging him with the crime of robbery, while armed, etc. He was sentenced to the penitentiary under the Indeterminate Sentence act for a term of from one year to life. That judgment was affirmed in this court June 19, 1929. Michaels began serving his sentence October 14, 1929. On November 1, 1932, he was released from the penitentiary on a writ of *habeas corpus* issued by the circuit court of Sangamon county. December 22, 1933, this court, in a *mandamus* proceeding, entered an order requiring the circuit court of Sangamon county to expunge its records and directing the warden to take Michaels into custody. He was apprehended in California and returned to prison November 23, 1934. The parole board heard the case October 19, 1930, and en-

tered an order as follows: "We are of opinion that parole should be denied, and that he should be given a 'final' of October, 1939." Upon his return to the penitentiary on November 23, 1934, the parole board declared Michaels an "escape" and demoted him to grade "E." February 13, 1935, the board revoked all former orders made by it in his case. January 16, 1936, the board was notified by the penitentiary authorities that Michaels had been restored to grade "A," effective as of April 14, 1930. In February, 1936, an order was entered by the board denying him a parole and fixing October 14, 1941, as "final." This is a petition for a writ of *habeas corpus* for the release of Michaels, who is now confined in the penitentiary at Statesville. The writ has been allowed, a return thereto has been made, and the Attorney General has moved to quash the writ.

The petition alleges, among other things, that prior to his release under the order of the circuit court of Sangamon county of November 1, 1932, and also subsequent to November 23, 1934, Michaels had earned time by good conduct, in diminution of his sentence, and that the parole board exceeded its authority, as well as violated the statute, by its action of February 13, 1935, in depriving Michaels of the right to time earned for good conduct. The proposition set out in the so-called first count of the petition is the claim that the parole board changed Michael's indeterminate sentence of from one year to life to a determinate sentence to expire in October, 1939, and that earned credits for good time would make his sentence expire in 1936, and by reason thereof he is entitled to be discharged. Under the second count it is charged the parole board unlawfully, and without any authority, changed the definite sentence which it imposed in 1930 to expire in October, 1939, to a sentence which would terminate in October, 1941, and that under those circumstances, Michaels is entitled to be discharged. It is contended that the legis-

lature intended, by the Parole act, that a prisoner, after serving the minimum sentence, is entitled to know when his sentence will expire; that while the parole board is given some discretion when it makes a determination of the expiration of a sentence, once the order is made it is a final and conclusive determination of the maximum term which the prisoner shall serve; that he is then vested with all rights of discharge and credits for good behavior as though the sentence for a fixed term had been pronounced by a court. The point is further urged that the term "final," as used by the board in the entry made by it in the first order, was in legal effect the fixing of the sentence for a period of ten years, and having once thus set the "final" the board has completed the quasi-judicial act it had authority to perform, and that such act had the same legal effect as though the trial court had, in pronouncing judgment, sentenced the prisoner to a definite ten-year term. The relator further urges that under the records of the board, the "final" of October, 1939, would have entitled the prisoner to his release on July 29, 1936, under the progressive merit system of rating earned time for good conduct, and the board's subsequent action changing the "final" to 1941, was, in effect, an increase in what had become a definite sentence; and, therefore, this is a violation of the constitutional rights of the prisoner.

Michaels was imprisoned under the Indeterminate Sentence act (State Bar Stat. 1935, chap. 38, par. 796, p. 1260) which provides, in substance, that, except for certain designated crimes, the sentence of the court shall be a general sentence of imprisonment and the courts are prohibited from fixing the amount or duration of such imprisonment. The statute also states that the term of commitment shall be for not less than the minimum nor more than the maximum term provided by law for the offense of which the person stands convicted and, further, that "It shall be deemed and taken as a part of every such sen-

tence, as fully as though written therein, that the term of such imprisonment or commitment may be terminated earlier than the maximum by the Department of Public Welfare, by and with the approval of the Governor in the nature of a release or commutation of sentence or commitment." The statutory penalty for robbery, while armed, is for a term of years not less than one year or for life.

The law is established in this State that a convict is imprisoned without due process of law and entitled to his release where it is made to appear that he is held in confinement after his sentence has expired, taking into account time earned by him by reason of his good conduct. (*People* v. *Siman,* 284 Ill. 28; *People* v. *Eller,* 323 id. 28.) The statute provides, with reference to credits for good conduct, that "The Department of Public Welfare is authorized and directed to prescribe reasonable rules and regulations for the diminution of sentences on account of good conduct, of persons heretofore and hereafter convicted of crime, who are confined in the State penal and reformatory institutions." (State Bar Stat. 1935, chap. 108, p. 2413.) The Parole act (State Bar Stat. 1935, chap. 24a, par. 55(1), p. 788) requires the parole board to consider and give weight to the record of the prisoner's conduct as kept by the superintendent or warden and we have held that such requirement is an imperative duty of the board. *People* v. *Hill,* 348 Ill. 441.

The sentence under which Michaels was committed was one for the maximum term provided by law for the offense of which he was convicted, namely for life, and he may not demand, as a matter of right, that he be discharged before the expiration of such maximum term, good conduct credits, of course, considered in diminution of such term. (*People* v. *Connors,* 291 Ill. 614.) Since the issues here relate primarily to the acts of the parole board, it is proper to examine its powers.

For several years before 1927 the right to grant paroles was lodged in the Department of Public Welfare, but, by a statute passed that year, (State Bar Stat. 1935, chap. 24a, par. 55(1), p. 788,) the parole board was created. This act provided that this new board "shall exercise and discharge all the rights, powers and duties heretofore vested in the Department of Public Welfare in granting paroles to persons sentenced or committed for crime or offenses, but the supervision and aftercare of persons so paroled shall remain in the Department of Public Welfare," etc. Thus it appears that the parole board is a separate, organized body with a separate personnel, within the Department of Public Welfare, vested with the exclusive right to determine whether an offender eligible to parole shall be confined in the penitentiary. A prisoner is not eligible for parole until he has served the minimum term of imprisonment "less good time allowed as provided by law." The board is given no power of supervision over the prisoner's conduct either while he remains in the penitentiary or while on parole. The parole of a prisoner does not have the effect of a discharge. That subject is covered by section 9 of the Parole act which provides "whenever it shall be made to appear to the satisfaction of the Department of Public Welfare that any prisoner or ward has faithfully served his or her term of parole and the Department of Public Welfare shall have information that such prisoner or ward can safely be trusted to be at liberty and that his or her final release will not be incompatible with the welfare of society, the Department of Public Welfare shall have power to cause to be entered of record in its department an order discharging such prisoner or ward for or on account of his or her conviction or commitment, which said order when approved by the Governor shall operate as a complete discharge of such prisoner or ward, in the nature of a release or commutation of his or her sentence," etc. (State Bar Stat. 1935,

chap. 38, par. 804, p. 1262.) Section 13 of article 5 of our constitution places in the Governor, alone, the power to grant reprieves, commutations and pardons, and this made necessary the approval of the Governor. There is no express statutory authority empowering the parole board to fix the expiration of a prisoner's sentence either before or after he has served the minimum of the sentence, nor can any such inference reasonably be drawn from the language of the act. The wording of the board's order of October, 1930, does not warrant the construction put upon it by the petitioner. The return to the writ states that under the rules of the parole board and the Department of Public Welfare the order meant that if the prisoner's conduct was such as to earn all good time then possible, his name would again appear on the parole board's docket at the end of six years, nine months and fifteen days. The effect of the relator's claim that a fixed sentence of ten years was rendered by the board in October, 1930, is that an arm of the executive department usurped a judicial function. *People v. Jenkins,* 322 Ill. 33.

What we have said with reference to the October, 1930, order applies with equal force to the board's order of February, 1936. It was neither a new sentence nor an increase of a former sentence. Relator does not contend that he is entitled to his discharge at this time, even with all proper credits for good conduct, except on the false premise that the 1930 order was the fixing of a determinate sentence of ten years. The parole board, in the exercise of its lawful functions, has not yet determined that Michaels is a fit person to serve his sentence outside the penitentiary, nor has it admitted him to parole.

It is, therefore, ordered that the writ be quashed and that James Michaels be remanded to the custody of respondent, Joseph Regan.

*Writ quashed and prisoner remanded.*