## UNITED STATES ex rel. FOLEY v. RAGEN, Warden.

### No. 8506.

Circuit Court of Appeals, Seventh Circuit.
June 10, 1944.

George F. Barrett, Atty. Gen., of Illinois (William C. Wines, Asst. Atty. Gen., of counsel), for appellant.

Kenneth C. Sears, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment of the District Court, entered on September 27, 1943, discharging upon habeas corpus the appellee, George Foley, from incarceration in an Illinois State Penitentiary located in Will County, Illinois. The writ was directed to respondent, Joseph E. Ragen, warden of the penitentiary, who filed a return thereto. The court heard the testimony of both the relator and the respondent, and also received in evidence a number of written documents and exhibits. The court, in support of its judgment of discharge, entered findings of fact and conclusions of law and also rendered an extended opinion. United States ex rel. Foley v. Ragen, Warden, et al., D.C., 52 F.Supp. 265, 269. Reference to this opinion will obviate the necessity for a detailed narrative of the unusual situation which confronted the trial judge.

Relator was convicted on October 14, 1933 in the Circuit Court of Sangamon County, Illinois, of burglary and larceny and was sentenced, under the Indeterminate Sentence Act, Chap. 38, § 802, Ill.Rev.Stats. 1943, to a term of one year to life. By reason of such sentence, he was confined in the Illinois penitentiary until his discharge in the instant proceeding. He claims that during all of such time he was without funds to employ counsel and without relatives or friends whom he could call upon for assistance. He was permitted to file his petition in the instant matter in forma pauperis, and the court appointed counsel who ably represented him. On respondent's appeal to this court, we, on our own motion, appointed counsel to represent the relator, who has submitted a well prepared brief and argument in support of the judgment.

We are confronted, as often in cases of this character, with the question as to whether relator had exhausted his remedies in the state court so as to confer jurisdiction upon a federal court. The court below recognized the general rule in this respect, but for reasons hereinafter stated concluded that this was "that rare case where exceptional circumstances of peculiar urgency are shown to exist," which removed it from the general rule. It would serve no good purpose to cite or discuss the numerous cases in which this general rule has been announced and applied, in view of the recent decision in Ex Parte Hawk, 321 U.S. 114, 64 S.Ct. 448 (decided subsequent to the opinion of Judge Barnes in the instant case). The general rule there stated (page 116 of 321 U.S., page 450 of 64 S.Ct.) is:

"Ordinarily an application for habeas corpus by one detained under a state court

judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." (Citing cases.)

We shall, therefore, first consider the relator's efforts to secure his release through state remedies available, and then the circumstances which the court below thought made this an exceptional case. In doing so, we note that relator's petition itself is devoid of any jurisdictional allegations. Ordinarily we think this would be fatal, but in view of the unusual circumstances we shall consider, as the court below no doubt did, all facts which tend to show jurisdiction, the same as though they had been properly alleged.

The sole proceeding instituted by the relator in an Illinois court, seeking his release, was a petition filed (or sought to be filed) in the Supreme Court of Illinois in the early part of March 1943, in which he asked leave to proceed in forma pauperis. There is some contradiction in the record as to whether this petition was permitted to be filed. In a letter directed to relator, dated May 11, 1943, and signed by the clerk of the Supreme Court, this statement is contained:

"Petitioner was allowed to file this petition for writ of habeas corpus as a poor person. The petition upon consideration was denied."

Notwithstanding this positive statement on the part of the clerk of the Supreme Court, Warden Ragen on March 11, 1943 sent a notice to relator as follows:

"I am today in receipt of the following letter dated March 9th, 1943 from Edward F. Cullinane, clerk pro tempore, Supreme Court, State of Illinois, Springfield, as follows:

"'Re: No. 27136 ex rel. Foley v. Ragen. The Supreme Court today denied the motion of the petitioner in the above entitled case for leave to sue as poor person and for writ of habeas corpus.'"

It will be noted that the letter from the warden is inconsistent with the letter from the clerk of the Supreme Court and that the former was written almost two months prior to the latter. It seems reasonable to believe that the relator, after receiving the warden's letter, must have written directly to the Supreme Court and in response received from the clerk the letter above

mentioned. Without endeavoring to explain the inconsistency, we think the statement contained in the clerk's letter must be accepted as a fact.

 It appears from the statement above quoted from the Hawk case that it was incumbent upon the relator to seek a review of the action of the Illinois Supreme Court "by appeal or writ of certiorari" to the Supreme Court of the United States. More important, however, is the fact that other Illinois courts were available to relator. § 2 of the Habeas Corpus Act of Illinois, Ill.Rev. Stats. 1943, Chap. 65, provides three courts to whom application for the writ of habeas corpus may be made: (1) to the Supreme Court, (2) to a court of competent jurisdiction in the county in which the applicant is imprisoned, and (3) to a court of competent jurisdiction in the county from which said applicant was committed. The Supreme Court may in the exercise of its discretion grant the writ. North Chicago Hebrew Congregation v. Board of Appeals, 358 Ill. 549, 554, 193 N. E. 519. The other courts to which application may be made are of general jurisdiction in which the relator, upon a proper showing, has an absolute statutory or constitutional right to relief by habeas corpus. The order or judgment in such proceeding is not final and, therefore, not appealable. It also cannot be pleaded as a bar to another such proceeding. People ex rel. Maglori v. Siman, 284 Ill. 28, 30, 119 N.E. 940.

 It appears plain, therefore, that it is incumbent upon a person who seeks habeas corpus to do so in each of the three courts designated by the statute before it can be said that his state remedies have been exhausted. Here again the situation is similar to that before the Supreme Court in Ex parte Hawk, supra, where the court (page 116 of 321 U.S., page 449 of 64 S.Ct.) stated:

"So far as appears, petitioner's present contentions have been presented to the state courts only in an application for habeas corpus filed in the Nebraska Supreme Court, which it denied without opinion. From other opinions of that court it appears that it does not usually entertain original petitions for habeas corpus, but remits the petitioner to an application to the appropriate district court of the state, from whose decision an appeal lies to the state Supreme Court * * *."

"Of this remedy in the state court petitioner has not availed himself."

The only distinction between the two situations is that in Nebraska the Supreme Court has the right to review the judgment of a lower court in habeas corpus, while in Illinois the Supreme Court has no such right. It will be noted in the Hawk case the Supreme Court of Nebraska denied the writ, just as the Supreme Court of Illinois did in the instant case. The court having held in the Hawk case that it was incumbent upon Hawk to resort to a lower court after his writ was denied by the state Supreme Court, we think it follows that the same must be held as to the relator in the instant case.

The substance of relator's complaint that he was unlawfully detained may be divided into two parts: (1) that the trial resulting in his conviction was conducted in such manner as to deprive him of his constitutional rights, and (2) that he has been deprived of his constitutional rights by the Parole Board of Illinois and by its statutory successor, the Division of Correction. While the District Court made certain findings of fact which raise some doubt as to whether relator was properly convicted, its judgment was not predicated upon this theory but was based wholly upon the acts of the Parole Board and its successor.

█ In view of this basis for the court's decision, it is not of controlling importance but nevertheless it seems pertinent to observe that relator's complaint regarding the manner of his conviction was and is still open to review as a matter of right by writ of error to the Supreme Court of the state. Chap. 38, Par. 771, Ill.Rev. Stats. 1943. This is a writ of right, and must be issued in all criminal cases where the penalty is not death. There is no time limit within which the writ must be sought except the common law period of twenty years, which period has not expired. In the recent case of People v. Brown, 383 Ill. 287, 48 N.E.2d 953, the writ of error issued and a judgment was reversed eleven years after conviction.

Also, in the Hawk case, the Supreme Court held that it was incumbent upon the applicant to exhaust the common law writ of error coram nobis recognized in Nebraska. Illinois provides a statutory proceeding, Chap. 110, Par. 196, Ill.Rev. Stats. 1943, in the nature of the common law writ of error coram nobis. Such writ, however, must be applied for within five years after rendition of final judgment unless the person is under duress. In such case, the period of duress is excluded from the computation of the five year period. In view of what we shall subsequently say on this matter of duress, we are inclined to think that such writ is still available, although we do not care to rest any part of our decision, under the circumstances, upon a remedy of such dubious propriety.

█ It thus appears, conclusively so we think, that the relator had not exhausted the state remedies available to him. This would preclude a federal court from taking jurisdiction unless it is one of those rare and exceptional cases, as found by the District Court. In support of such finding, the court stated:

"The court is of the opinion that the facts, that for a period of years petitions for writs of habeas corpus were not permitted to be sent out of the Illinois penitentiaries by inmates of those institutions and that the right to send out such a petition was denied to the petitioner * * *."

The evidence in support of the statement just quoted presents a sordid picture of prison management in Illinois. We shall not recite it in detail. It is sufficient to note that from the time of his imprisonment until early January 1943, relator was advised on numerous occasions by the warden and other prison officials that he could not prepare or transmit to a court any petition for habeas corpus, but that it could only be done by a "competent attorney on the outside, or by relatives or friends." Thus to a person in the position of relator, without funds, friends or relatives, such an inhibition resulted in effectively closing the door of every court in Illinois. If this inhibition had continued in effect until the time, or approximately so, of filing of the petition in the instant matter, we would have no difficulty in agreeing that relator was excused from showing that all state remedies had been exhausted; in fact, we think it would have been high time for a federal court to intercede. However, as found by the District Court, this inhibition against relator communicating with the courts was lifted on January 8, 1943, when the warden informed him by letter "that the rule denying permission to prisoners to send out petitions for writ of habeas corpus had been suspended or abrogated."

This was almost six months before the petition in the instant proceeding was filed. That relator understood that the inhibition was no longer in effect is shown by the fact that he filed with the Illinois Supreme Court the petition heretofore referred to. No reason is shown why he could not also have pursued the other remedies heretofore suggested, as provided in Illinois.

▇▇▇▇▇ In this connection, it is also pertinent to observe that relator on May 5, 1943, through the prison officials, caused to be mailed to the Supreme Court of the United States a petition for writ of habeas corpus. Relator was advised by the clerk of that court, in a letter dated June 7, 1943, of the following order:

"In the matter of Ex parte George Foley [319 U.S. 742, 63 S.Ct. 1321, 87 L.Ed. 1694], October term, 1942, the Court today denied the motion for leave to file petition for writ of habeas corpus without prejudice to the pending application in the District Court."

That this order furnishes no assistance to the jurisdiction of the District Court is plainly shown by the opinion in Ex parte Hawk, supra, wherein the Supreme Court entered exactly the same order and later held that the District Court was without jurisdiction because of a failure on the part of relator to show that he had exhausted his remedies in the state courts. We therefore reluctantly reach the conclusion that the District Court was without jurisdiction. We say reluctantly because the opinion of Judge Barnes (52 F.Supp. 265) discloses a habeas corpus proceeding filed and heard in the District Court previous to the one now before us, and it was as a result of that proceeding that the Illinois prison officials lifted the ban on relator communicating with courts. He therefore no doubt had a knowledge of the situation, which is difficult to grasp from the record before us. While we think the result achieved by him is all to his credit, yet we cannot get away from the fact that when the ban was lifted the Illinois courts were just as accessible to relator as the federal courts and he should have first pursued his remedy in those courts.

Having held that the District Court was without jurisdiction, there is no necessity for us to consider the appeal on its merits. However, in view of the extraordinary circumstances, we shall briefly relate those relied upon by the lower court as a basis for its judgment. (Here again the facts are fully stated in the opinion of Judge Barnes.) As already stated, petitioner was committed to the penitentiary on October 14, 1933. On October 16, 1934, the state Parole Board notified relator of the following action taken by it:

"At a meeting of the Parole Board held October 16, 1934 the following action was taken in your case: Parole denied. October 31, 1945 Final."

It is the position of the relator, sustained by the lower court, that by reason of this order the indeterminate sentences given him by the court became a fixed sentence expiring October 31, 1945. Relator, under the law of the state, was entitled to certain good time allowance provided he maintained a standing as a Grade A. prisoner, which he did at all times during his confinement. Taking into consideration his good time allowance, he was entitled, so it is claimed, to be released December 15, 1941.

▇▇▇▇▇ In the meantime, the Parole Board had been abolished by the Illinois legislature and there was substituted in its place the Division of Correction of the Department of Public Safety of Illinois. (No question is raised but that this agency had all the powers, rights and duties formerly vested in the Parole Board.) This latter agency on November 14, 1941 notified relator as follows:

"At a meeting of the Division of Correction held today, the following action was taken in your case: Outlist not approved. Continued to October 31, 1948."

This action was taken without any notice to the relator and without opportunity on his part to be heard. It is conceded that the action of the Parole Board of October 16, 1934 was authorized, but it is argued that the action taken by the Division of Correction on November 14, 1941 amounted to an extension of relator's sentence and that such action was unauthorized and void. Much could be said, we think, in criticism of a practice which inculcates hope in a prisoner by fixing a definite goal to which he may look and work to attain, and, without a hearing, notice or assigned reason, extinguishes such hope. However, we are permitted to consider only the legal aspects of the situation. Furthermore, we think unquestionably that the rights and powers of this state agency, as construed by the Supreme Court of Illinois, must be given effect.

Unfortunately for relator, the precise question now raised was determined by the Supreme Court of Illinois in People ex rel. Michaels v. Bowen, 367 Ill. 589, 12 N.E.2d 625. In that case, as here, the prisoner was committed to an indeterminate sentence of from one year to life. On October 19, 1930, the Parole Board entered an order fixing his time as "final" as of October, 1939. In February 1936 an order was entered by the Board fixing October 14, 1941 as "final." On a petition for habeas corpus, it was contended that the last order of the Board was without authority and that it deprived him of time earned for good conduct. The court, in denying this contention, among other things said (page 595 of 367 Ill., page 628 of 12 N.E.2d):

"There is no express statutory authority empowering the parole board to fix the expiration of a prisoner's sentence either before or after he has served the minimum of the sentence, nor can any such inference reasonably be drawn from the language of the act. * * * The effect of the relator's claim that a fixed sentence of ten years was rendered by the board in October, 1930, is that an arm of the executive department usurped a judicial function. * * *

"What we have said with reference to the October, 1930, order applies with equal force to the board's order of February, 1936. It was neither a new sentence nor an increase of a former sentence. * * * The parole board, in the exercise of its lawful functions, has not yet determined that Michaels is a fit person to serve his sentence outside the penitentiary, nor has it admitted him to parole."

The District Court sought to distinguish the Bowen case from the instant one on the facts. True, there is some distinction in this respect, but the principle of law announced as to the authority of the Parole Board and its successor is directly applicable to the instant situation. Under the holding in the Bowen case, the Parole Board and its successor were without authority to fix the expiration date of relator's sentence. Neither of such orders converted an indeterminate court sentence into one which was fixed. The reason assigned for the discharge is, so we think, directly in conflict with the decision in the Bowen case.

The judgment is, therefore, reversed.